## BLISS v. REED.

### (Circuit Court, W. D. Pennsylvania. June 1, 1900.)

1. PATENTS—INVENTION—TRACTION ENGINES.

The Elward patent, No. 272,670, for a traction engine having two supporting and driving wheels which can rotate independently of each other, a compensating gearing through which power may be applied to both driving wheels equally when they are rotating at different speeds, a driving engine and a friction-clutch mechanism interposed between the driving engine and the compensating gearing mechanism, whereby the engine may be put into full motion, and its momentum then transferred equally to both driving wheels, covers a mechanical arrangement absolutely new, and a true combination in the sense of the patent law; the constituent elements co-operating to produce a result both new and useful.

2. SAME.

The Giddings patent, No. 330,576, claim 1, which relates to friction-clutch mechanism for use on traction engines, discloses a patentable combination which was not anticipated.

3. SAME—ASSIGNMENT—CONSTRUCTION.

An assignment of a patent by the patentee to a person named "(et al.)" passes all the right, title, and interest of the patentee, and vests the same in the person named as assignee, at least so far as to entitle him to maintain a suit thereon against a naked infringer.

4. SAME—INVENTION—TRACTION ENGINES.

The Titus patent, No. 302,449, claim 2, covering a particular construction of friction-clutch mechanism for use on traction engines, shows an invention of novelty and merit, and is valid.

In Equity. Suit for infringement of patents. On final hearing.

H. H. Bliss and John R. Bennett, for complainant.

J. H. Whitaker and Lysander Hill, for respondent.

ACHESON, Circuit Judge. The bill charges infringement of three letters patent relating to traction engines, namely, No. 272,670, granted to John H. Elward on February 20, 1883, No. 330,576, granted to Charles M. Giddings on November 17, 1885, and No. 302,449, granted to John C. Titus on July 22, 1884. The traction engine which these patents concern is the modern agricultural machine which propels itself, without the guidance and aid of tracks, over common country roads or across fields under uncertain, changing, and difficult conditions. To the Elward patent—the earliest of the three patents in suit—attention will be directed first. This patent describes, and by its illustrative drawings shows, a steam boiler and a driving engine; two supporting and driving wheels so mounted that they can rotate independently of each other; a compensating or power dividing gear through which power may be imparted to

both driving wheels equally, even when they are rotating at different speeds; a friction-clutch mechanism located between the driving engine and the compensating gear; the engine cylinder and crank shaft carrying a fly wheel at its outer end, placed above the boiler, and so arranged that the crank shaft and its fly wheel, while disconnected from the gear train, can be freely rotated to generate momentum; the construction of the machine and the relation of the parts being such that the engineer standing on his platform can raise the speed of the crank shaft and fly wheel to any desired practical limit, and then, by the manipulation of the friction clutch, transmit this increased energy, as well as the normal power of the driving engine, through the compensating gear train to the driving wheels.

The specification of this patent states:

"The object of this invention is to so construct a traction engine that it can be readily started after it has come to rest in the position occupied by it while in the operation of turning. To this end it consists in the combination with a compensating gear, which permits the power to be applied by both driving wheels equally, of a friction clutch, which permits the speed and power of the engine to be raised to the utmost before connecting the engine with the driving wheel."

Fig. 1.

Fig. 2.

Fig. 3.

## The specification further sets forth:

"The parts K, L, L¹, M, M¹, N, and O constitute a compensating gear of substantially the character now well known. When the power is transmitted by these devices, it is imparted to both driving wheels equally at all times, as is well known, and hence, in order to turn an engine on a curved path, a compensating mechanism of substantially this character is indispensable. By combining with this mechanism a friction clutch, I am enabled to impart the utmost power to the engine at any instant in equal degrees to the driving wheels. Without the compensating gear the power enhanced by the clutch would be all exerted upon one wheel, and even this greatest power thus exerted upon but one wheel is insufficient to start an engine of ordinary weight. Without the clutch the engine cannot get up enough momentum to overcome the inertia of the machine, although a compensating gear be employed."

## The patent has a single claim, which reads thus:

"In a traction engine, the combination of the following elements, namely, two supporting and driving wheels which can rotate independently of each other, a compensating gearing through which power may be applied to both driving wheels equally when they are rotating at different speeds, a driving engine, and a friction-clutch mechanism interposed between the driving engine and the compensating gearing mechanism, whereby the engine may be put into full motion and its momentum then transferred equally to both driving wheels, substantially as set forth."

There is, I think, no force in the suggestion that the claim does not specify a fly wheel. It calls for a driving engine which contains a fly wheel as one of its constituents. The specification speaks of the "usual" fly wheel carried on the end of the main shaft, and the patent drawings show the fly wheel as thus described. It was no more necessary to specify the fly wheel in the claim than it was thus to particularly name any other part of the driving engine. If the patent is valid, there is no serious question as to the infringement of it by the defendant. It quite plainly appears that each of the three styles of traction engines sold by him, namely, the Frick, the Huber, and the Gaar-Scott, embodies the improvement described in Elward's patent and covered by his claim. The utility of Elward's described and claimed construction is not disputable under the proofs. Its great practical success and its recognized advantages over all traction engines previously used are clearly shown. I do not find in any of the prior patents an anticipation of the subject-matter of Elward's patent of February 20, 1883,—the patent in suit. Not one of the machines of the earlier patents shows the construction of this Elward patent. The proofs justify the affirmation that, regarded as an entirety, the claim of this patent covers a mechanical arrangement absolutely new. No traction engine so constructed and operating was previously known.

But the defendant's counsel earnestly contend that Elward's claim is not for a legitimate combination of co-acting elements, but covers a mere aggregation of old mechanical devices, and therefore is void. This is the main defense now pressed against the Elward patent. A careful examination of the patent and the proofs, however, has satisfied me that the defense is not well founded. While the constituents entering into Elward's organization may there each perform its own special function, yet they also co-operate to a common end otherwise not attainable. By their associated action a new and useful result is brought about. The elemental parts specified in the claim stand in peculiar relationship. The friction-clutch mechanism is interposed between the driving engine and the compensating gear, and must be so placed to accomplish the desired object. Through the instrumentality of the friction clutch so located, the machine is always under the positive control of the operator, who, according to the emergency, can raise the speed of the crank shaft and its fly wheel when disconnected from the traction gear, and then make this increased energy effectively available through the compensating gear train upon the driving wheels. I am, then, of the opinion that we have here a true combination in the sense of the patent law. This view is sustained by the authorities. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; National Cash-Register Co. v. American Cash-Register Co., 3 U. S. App. 340, 355, 3 C. C. A. 559, 53 Fed. 367. This precise question was raised in the patent office by the primary examiner before the issuing of the patent, and after investigation was decided,— I think, rightly,—in favor of Elward by the appeal board of examiners in chief.

We are now brought to the consideration of the Giddings patent.
While this patent, both as to date of application and issue, is later
than the patent to Titus, yet the evidence establishes, and, indeed,
it is conceded, that as between these two patents priority of inven-
tion is to be accorded to Giddings. The proofs show—and I do not
understand it to be denied—that the traction engines of the "Frick"
style sold by the defendant embody the subject-matter of the first
claim of the Giddings patent, which claim is the only one now pressed
by the complainant. The specification of this patent states that the
"invention pertains to traction engines in which a friction clutch is
employed in the mechanism transmitting motion from the engine
shaft to the traction axle, and relates particularly to the arrange-
ment and construction of parts," as described.

The clutch of this patent is so constructed and operated that mo-
mentum is taken directly from the rim of the fly wheel by means
of friction shoes movable radially, at the will of the operator, into
and out of engagement with the inner side of the rim, and stationary

when out of engagement with the rim, even though the fly wheel is rapidly revolving. The rotary power transmitter or motor pinion is loose upon the shaft, but is without sliding movement longitudinally, and permanently preserves its position with reference to the gearing. The sliding part of the clutch, by which the motor pinion is thrown into and out of rotation, is the collar, P, which moves longitudinally upon the hub, L, of the clutch; the hub and the motor pinion being rigidly connected, both being integral parts of the clutch spider, K. A portion of the descriptive part of the specification may here be quoted:

"G represents a pinion loose upon the motor shaft; H, a train of gearing adapted to transmit rotary motion from the pinion, G, to the axle gear, D; I, a fly wheel fast upon the motor shaft; J, a portion of the rim of the same, bored so as to present a true interior surface; K, a clutch spider located within the bored portion of the fly wheel, and fitted to be free upon the motor shaft; L, the hub of the clutch spider, formed solid with the clutch spider, loose upon the motor shaft, and rigidly connected with the motor pinion, G; M, a pair of segmental shoe holders pivoted to the clutch spider, as indicated in Fig. 2; N, wooden shoes held one in each shoe holder, and having a peripheral surface fitting the interior of the bored portion of the fly wheel; O, the pivots connecting the shoe holders with the spider; P, a collar sliding longitudinally upon the hub of the spider, and adapted to be operated by an ordinary clutch-shifting device; Q, toggle rods pivoted to ears formed upon the sliding collar, and upon the free end of the shoe holders; and R, dovetail projections cast upon the face of the hub of the spider, and babbitted into dovetail recesses cast in the contiguous face of the motor pinion G."

The specification thus states the mode of operation and effects:

"The sliding collar, with its rods, forms a toggle system. When the collar is moved to the right, viewed as in Fig. 1, the toggle becomes shortened, and the shoes drawn inward. In this condition the motor shaft, with its fly wheel, may be revolved, while the clutch spider, with all of the transmitting gearing and traction apparatus, remains motionless. When the collar is moved to the left, the shoes are pressed forcibly against the rim of the fly wheel, and the effect is to lock the motor pinion to the fly wheel. Under such conditions rotary motion is transmitted from the motor shaft to the traction apparatus. The shoes, N, being of wood, are somewhat elastic. This elasticity permits the sliding collar to be pushed to the left a trifle past the center of oscillation of the toggle rods, in which position the toggle system remains self-locked. In moving the sliding collar to the left, the pressure with which the shoes engage the fly wheel is under perfect control, and this pressure may be so controlled as to permit a certain degree of slippage between the wheel and shoes, whereby a portion only of the rotary motion of the fly wheel is transmitted to the spider. The result of this arrangement is that the motor shaft, E, running at a constant speed, may be caused to transmit a variety of speeds to the traction apparatus."

The first claim of the patent—the only one now in question—is as follows:

"(1) The combination, with the shaft, the fly wheel, and hub, of the collar, P, the shoe supports, the shoes, and rods, Q; all of the above parts combined and adapted to operate as described."

Without undertaking to discuss at length the voluminous proofs bearing upon the subject, I content myself with stating the conclusions to which they have brought me. I am of opinion that the improvement of Giddings disclosed in and by his patent and covered by his first claim was patentably new and useful; that he was not anticipated by any of the anterior patents contained in this record,

or by any earlier structure; that his first claim is for a patentable combination, and that it has been infringed by the defendant.

At final hearing a question was raised growing out of the peculiar form of the assignment of the Giddings patent by the patentee to J. B. Bartholomew, through whom the complainant claims. The assignment is unto "J. B. Bartholomew (et al.), * * * said right to be held and enjoyed by the said J. B. Bartholomew et al., his or their heirs and assigns," etc. Assuming that under the pleadings this question is properly before the court, I am of opinion that it does not bar a decree against the defendant. There is no evidence dehors the assignment that the parties thereto intended to invest any particular person other than Bartholomew with title. It would be a strained inference to deduce such purpose from the mere use of the vague addition "et al." But indisputably "all the right, title, and interest whatsoever" of the patentee in and to the patent passed from him by his assignment, and it is very clear that the whole legal title to the patent vested in Bartholomew, who conveyed that title to the complainant; and this, it seems to me, is sufficient to enable the complainant to maintain a bill against a naked infringer.

The claim of the Titus patent alleged to be infringed is the second, which is as follows:

"(2) The combination, with the crank shaft, a traction wheel, and intermediate gearing, of the fly wheel, sleeve, E, provided with a pinion and with arms, E1, block supports guided on said arm, friction blocks, and devices, substantially as described, for moving the blocks in contact with the wheel, substantially as set forth."

This claim relates, it is true, to a detail of construction only, but the evidence shows that the invention possesses real novelty and substantial merit. The proofs also show that in the Frick machine sold by the defendant this invention is employed. The defendant's position that Giddings, because prior in time to Titus, defeats the latter, is not, I think, well taken. Undoubtedly these two inventions are upon the same general line, and it may be conceded that the Giddings invention is the broader. Nevertheless the specific device disclosed by Titus, and covered by his second claim, is not shown in the Giddings patent. Giddings describes a "toggle system" whereby his friction shoes are drawn inward and thrown outward. Titus, however, does not employ the hinged shoes of Giddings, but centrifugally acting sliding shoes. The precise improvement made by Titus is not met by any earlier patent. I see no good reason for refusing to sustain the specific grant to him contained in his second claim. There is no inconsistency in upholding these two patents and in finding that there is infringement of both. The two inventions are distinct, and therefore each is valid, although Giddings may dominate Titus. Let a decree be drawn in favor of the complainant in accordance with the conclusions expressed in this opinion.