BLISS v. REED.

(Circuit Court of Appeals, Third Circuit. January 18, 1901.)

No. 5.

1 PATENTS—INVENTION—TRACTION ENGINES.

The Elward patent, No. 272,670, for a traction engine, discloses a combination which was novel and of great merit as applied to the particular art, and by which the problems peculiar to the construction of a successful road engine were first solved.

2. SAME.

The Giddings patent, No. 330,576, claim 1, which relates to friction-clutch mechanism for use on traction engines, discloses a patentable combination which was not anticipated, and is valid.

3. SAME.

The Titus patent, No. 302,449, claim 2, covering a particular construction of friction-clutch mechanism for use on traction engines, shows an invention of novelty and merit, and is valid.

4. SAME—ASSIGNMENT—CONSTRUCTION.

An assignment of a patent by the patentee to a person named "et al." passes the legal title, and, in the absence of proof that any one besides the person named was beneficially interested, his title is sufficient to support an action against an infringer.

5. BILL OF REVIEW—APPLICATION FOR LEAVE TO FILE—PROCEDURE.

An application made to the circuit court of appeals after its affirmance of a decree for leave to file a supplemental bill in the nature of a bill of review will be referred to the circuit court, with permission to that court to entertain it.[1]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

J. H. Whitaker and Lysander Hill, for appellant.
H. H. Bliss and John R. Bennett, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BUFFINGTON, District Judge.

[1] Necessity of leave to file bill of review after decisions on appeal, see note to Bank v. Taylor, 4 C. C. A. 72.

BUFFINGTON, District Judge. This bill alleges that respondent infringed letters patent to Elward, No. 272,670, granted February 20, 1883, to Charles M. Giddings, November 17, 1885, and to John C. Titus, July 22, 1884, in the sale of certain traction engines. The circuit court for the Western district of Pennsylvania so found, and decreed an accounting on the Elward patent, and an injunction, with accounting, on the first claim of the Giddings and the second claim of the Titus. 102 Fed. 903. Such decree is here assigned as error. Careful study of the art and the questions involved convinces us no error was committed. The construction of a successful road engine involves problems and difficulties peculiar to that art, as contrasted with that of track or locomotive engines. The calls upon a road engine are not only nonuniform, but of widely-separated character; and the particular difficulties to be overcome are of a singular and individual, as contrasted with a generic, character. These calls evidence themselves in the wide range between the maximum and minimum of exerted power, and also in the different points where the power required is centered, and in effect monopolized. As evidencing the varying power calls, it is clear that the major part of the road may be so comparatively smooth and level that a minimum of power would suffice to move the engine; but one short, steep hill at the end of this unbroken level necessitates a marked increase of power and an increased weight of equipment. To carry a 10 horse power engine for miles where it is only needed for a few rods is manifestly noneconomic, if not, indeed, wasteful. So, also, in the nonuniform, eccentric places of power application. The wheels at one side may be on even ground. On the other they may be in a deep rut, or called to mount a stump, stone, or other impediment. On one side they may be on hard ground, where they grip firmly, while on the other they may be dragging through stiff muck or slipping through mire. It will appear, therefore, that not only must there be the requisite maximum of power at hand, but there must be means for instantly applying it, and that, too, at the needed point. The ordinary mechanical method would be to carry and maintain a 100-unit mechanism, and use 10 units for the all-day, normal conditions, and the 100 for the infrequent 100-unit demand. The extraordinary method, that of inventive genius, would be to use a 10-unit mechanism for the all-day, normal needs, but to place it in such relation with other mechanism and appliances that in such combination the 10-unit mechanism can, for the time being, be converted into a 100-unit one. If this highly useful, economic, and novel end be secured, who can deny that it constitutes a combination of great merit? Now, such combination was first shown by the Elward patent. This he secured by placing in novel relations, in a traction engine, three elements, individually old and of well-recognized individual functions. A compensating gear, in connection with traction engines, was known years before. It is not necessary to here explain in detail this really striking mechanism. It suffices to say that by it the main or forward ground wheels of a traction engine are adapted to work together as long as they meet even re-

sistance, but the instant one meets a greater resistance an automatic readjustment of the applied power follows; the increased strain and multiplied power at one side are so adjusted to the relatively less strain and diminished power at the other that the two wheels continue to regularly and evenly move forward, instead of one being detained by, and in fact pivoted at, the point of greater resistance, while the other is pushed forward in an arc-shaped path. It would now appear that the mechanical possibility of this gear in absorbing, adjusting, and using a maximum of power in traction engines was not used to its full capacity by reason of the absence of means for rapidly storing and safely conveying such maximum power to it. It was also well known, as a general mechanical principle, that a 10-unit engine could, by the addition of a fly wheel of suitable weight and proportion, store and maintain a quantum of power equal to that generated by a much larger mechanism without such wheel. While both these elements were well known, no one prior to Elward conceived the idea of bringing the two into effective combination through a friction clutch. While the patent to Lake, No. 105,956, of 1870, speaks of speeding the engines and attaining a corresponding measure of power, yet Lake did not disclose Elward's combination. He had no compensating gear, nor was a fly wheel used for power storage. He made direct connection between the piston and axle crank. Moreover, Elward's device was no mere mechanical advance, or a mere juxtaposition of old elements which only continued to exercise their former isolated functions in connected relations. In their new relation, the three elements of fly-wheel stored power, friction clutch, and compensating gear were made to so mutually co-operate, co-act, and in effect unify with each other, that they produced a new unitary result, to wit, a traction engine adapted to meet abnormal maximum demands by the use of normally minimum mechanism. In their new relation to each other, through the transmitting medium of the clutch, both gear and engine make a novel and wider use of their functions than before. In mere mechanical construction they are as they were before, but in functional power and efficiency they are by their new relation re-created and different. We are therefore of opinion that Elward disclosed a novel and patentable combination. The patents of Giddings and Titus concern different forms of friction clutch. The device of Giddings, though covered by a patent of later application and issue than that to Titus, is conceded to have been of earlier conception. We note two features which differentiate it from Elward's clutch. Elward brought a movable enveloping cone into engagement with the fly-wheel hub, and this movement carried his power-transmitting gearing. Giddings took the power from the rim instead of the hub of the fly wheel by the use of a sleeve, mounted so as to envelop the axle of the fly wheel, carrying the motor pinion and permitting the latter to remain in constant mesh with the transmitting gear. A study of the art shows that Giddings' device was novel. It is true Elward's prior patent, No. 236,565, of 1881, shows in Fig. 7 a mode of taking power from the fly-wheel rim, but its mo-

or pinion is shifted sideways to mesh with the transmitting gear mechanism. Moreover, the shoe type is different. It is moved sideways, and must touch the fly-wheel spokes before it is forced to engage the rim, while Giddings' shoe is initially forced radially into engagement with the rim by lever force. Moreover, Giddings' sleeved mounting of the clutch, and its relation to the motor pinion and hub of the clutch spider, are such as to permit the motor pinion to remain stationary, though the fly wheel revolves. The advance of Giddings over the prior art is illustrated on comparison with the nearest approach to it, evidenced by the patent of Allen, No. 138,980. In Allen the band wheel is supplied with constant (not varying or stored) power. This wheel revolves on, is not affixed to, an axle. His object was the comparatively simple one of conveying power to and revolving this axle. His problem was to devise a form of clutch, attach it to the axle, and engage it with the fly-wheel rim. But Giddings' was essentially different and more complex. He had a fly, not a band wheel, and one therefore necessarily affixed to the axle, since its power was axle-transmitted. His problem was to transmit the stored power of the fly wheel through a motor pinion revolving concentric with an axle integral with the fly wheel, and, when not so transmitting, to leave the motor pinion in permanent mesh with the connecting gear mechanism, and the fly wheel free to revolve. This Giddings did by mounting his motor pinion in a fixed vertical line of a sleeve concentric with the fly-wheel axle; by a clutch spider, free upon the motor shaft; a hub, solid with the clutch spider, loose on the motor shaft, but rigidly connected with the motor pinion; and a collar sliding longitudinally upon the hub of the spider through the leverage of an ordinary clutch-shifting device. From this it will be seen that the combination, and indeed the individual elements thus used on a traction engine, were far different from Allen's device, which concerned the belting and shafting of a machine shop. In Allen's patent it was devising a form of friction clutch; in Giddings', it was placing a friction clutch in new relations, and so combining it with a motor pinion as to permit the latter to remain in constant mesh with connecting gear. The same general generic principle is followed by Titus, who disclosed a different type of clutch construction. This consists in bringing the entire shoe surface simultaneously into rim engagement, in an elastic packing backing for the shoe, and in an automatic locking device, by which, when once set, the clutch so remains without further lever pressure. Subject, of course, to the earlier and broader invention of Giddings, we are of opinion the device of Titus involved patentable novelty.

The title of Giddings' patent is questioned by reason of the fact that the assignment of the patentee is to "J. B. Bartholomew et al., of Peoria, Illinois; * * * said right to be held and enjoyed by the said J. B. Bartholomew et al., his or their heirs and assigns." By this paper, it is clear, the entire title, legal and equitable, passed from Giddings; and it is equally clear that the legal title passed to Bartholomew, and was by him conveyed in 1894, and is now vested

in the complainant. There is no proof that any one was beneficially interested with Bartholomew in this patent, no consideration is shown to have passed from any other person, and no one is now making, or in all these years or through this protracted and important litigation had made, claim to any interest therein. If there was such outstanding title, we are assured the respondents would not have suffered its existence to be a matter of conjecture. In the absence of all such proof, the lapse of time, and the fact that the question is now raised only by an infringer, we are warranted in treating those words as surplusage.

In view of the length of this opinion, we content ourselves with stating that an examination of the proofs satisfies us that infringement of the Elward patent, the first claim of the Giddings, and the second claim of the Titus, is established. The decree of the circuit court will therefore be affirmed.

## In the Matter of the Petition of B. D. Reed.

PER CURIAM. This petition was presented when the case was called for argument. It was then determined to allow the argument to proceed, and dispose of the petition later. The appeal has been determined by an opinion of even date, and we will treat the petition as having been presented subsequent to our decision. So regarding it, in accordance with the practice followed by this court in Steel Co. v. Vermilya (No. 36, Sept. term, 1898), 33 C. C. A. 619, 90 Fed. 493, it is ordered that leave be and is granted to the petitioner, B. D. Reed, to make application to the circuit court of the United States for the Western district of Pennsylvania for leave to file in that court a supplemental bill, in the nature of bill of review, to bring forward the alleged new matters, in accordance with the prayer of petitioner presented to this court.