ACME-KEYSTONE MFG. CO. v. DEARBORN et al.

(Circuit Court of Appeals, Second Circuit.  February 14, 1911.)

No. 157.

PATENTS (§ 328*)—INFRINGEMENT—BLIND STITCH SEWING MACHINES.
      The Dearborn patents No. 639,669 and No. 705,326, for improvements in sewing machines of the kind known as "blind stitchers," construed, and *held* infringed by the machine of the Dearborn patent No. 814,642.

Appeal from the Circuit Court of the United States for the Southern District of New York.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit in equity by the Acme-Keystone Manufacturing Company against Charles A. Dearborn and Barnet Grossbard, copartners as the American Blind Stitch Company. Decree for complainant (180 Fed. 766), and defendants appeal. Affirmed.

Harry E. Knight (D. J. Newland, Wm. E. Knight, and Charles C. Gill, of counsel), for appellants.

Hillary C. Messimer, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The patents all deal with improvements in sewing machines of the kind known as "blind stitchers." The nature of these machines is very clearly and concisely stated by the Circuit Court as follows:

"(These machines) make stitches in cloth which enter the cloth without going entirely through it, and show on one side only—blind stitches, so called. This type of sewing machine is largely used to sew hems in garments, generally at the bottom of trousers and skirts. In order to perform the sewing operation the cloth is folded to form a ridge or rib through the upper part of which ridge the needle enters, but does not pass through to the under side thereof. The thread is caught up from the needle as it passes through the ridge by the aid of a so-called looper in its forward movement and the stitch held while the needle passes through the ridge. The loop of thread which is formed on the off side of the needle is carried in the prongs of the looper by a swinging or rocking motion across the line of the seam to enable the needle to pass through it in its successive forward and backward movements. As the stitching progresses the cloth is automatically moved towards the stitching point and the swinging movement of the looper enables it to take the loop from the needle at one side of the stitching and shift it to the other."

The validity of all three patents is conceded.

The first patent is No. 639,669, granted December 19, 1899. Claims 1 and 2 are alone involved, but since defendant's expert concedes that, if claim 1 is infringed, claim 2 is also infringed, it will be necessary only to discuss the former. It reads as follows:

"1. In a sewing machine, the combination with a feeding mechanism, of a needle arranged to reciprocate horizontally or approximately so, and transversely to the line of feed, mechanism for operating said needle, a looper-rod provided with a looper located above the work-support and presser-foot and co-operating with said needle and the acting portion of which looper is eccentric to the longitudinal axis of said looper-rod, and mechanism for operating said looper-rod to cause the same to have a forward longitudinal movement to carry the looper forward above the work at one side of the line of stitches to take a loop from the needle above the work, then an axial or rocking movement to carry the looper across the line of stitches to the other side thereof, and then a longitudinal receding or rearward movement above the work to enable the looper to present the loop to the needle, and then a second axial or rocking movement to carry the looper again across the line of stitches to its first position, from which it may again move forward to take another loop, substantially as set forth."

The relevant parts of this claim are those which refer to the mechanism for operating the looper-rod so as to give a four-phase cycle of movement to the looper. This is, first, brought forward to take up the loop at one side of the line of stitches; second, it rises to make clearance and is brought across to the other side and there lowered so as

to present the loop in the path of the needle; third, it is brought back parallel to the stitch line, leaving the needle free to make the stitch; and, fourth, it is brought back across the line of stitches to its original position. These movements are accomplished by a highly ingenious and somewhat complicated arrangement of parts whereby the revoluble movement of a power shaft is transformed into three other movements, viz., a reciprocating movement in line with the stitching, an axial movement of the looper-rod and its yoke connection, and a rocking movement which causes dipping and rising to make clearance when required. It will not be necessary to go at length into the details of this intricate mechanism, since it is of no general interest. Those interested in the result will understand the opinion without any such presentment of the question.

The mechanism of defendant differs in some respects from that of the patent. It is made under a later patent issued to defendant, No. 814,642, but that circumstance does not necessarily negative infringement. The later patent expressly states that it relates to improvements in stitch-forming mechanism such as is illustrated in patent No. 639,669. It not infrequently happens that some improvement on an older device exhibits patentable novelty, but cannot be put in practice without infringement of the original device, which it has improved. In the defendant's structure the looper has a four-phase cycle. First, it is brought forward to take up the loop at one side of the line of stitches; second, it rises to make clearance and is brought across to the other side and there lowered so as to present the loop in the path of the needle; third, it is brought back parallel to the stitch line, leaving the needle free to make the stitch; fourth, it is brought back across the line of stitches to its original position.

Defendants' expert contends that their device does not infringe because the looper of the patent has two tines, while defendants' has only one, but the modified form is a fair equivalent of the original. The real controversy in the case is as to the movement by which the looper is transferred from one side of the stitch line to the other. In the device of the patent the looper is eccentrically mounted on the looper-rod. In consequence, when the latter rotates axially, the looper moves in the arc of a circle above the stitch line, and at the same time changes its own position 90 degrees, thus presenting the loop to the needle. Defendants' single-prong looper does not need to make this change of its own position. It does not itself rotate, but follows the arc of the circle. (The word "circle" is used for convenience. The curve followed in these machines may not be a true circle.) The claim, it will be observed, uses the phrase "then an axial or rocking movement to carry the looper across the line of stitches." Complainant contends that this may be either "an axial movement" or "a rocking movement." Defendants insist that only one variety of movement is covered, namely, "an axially rocking movement." For the purposes of the argument, it may be conceded that the two adjectives, "axial" and "rocking," mean the same thing. But the claim does not state that the looper itself is to have this axial or rocking movement. It is the part which carries the looper forward, across, back, and across again which is to have the axial or rocking movement. The real ques-

tion in the case is what is meant by the looper-rod of the claim in view of the description of the patent. At the inner end of the straight rod which carries the looper is a yoke into which it is screwed, so as to form an integral structure as much so as if the two were cast in a single piece. Other parts, disk, arm, pin, and sleeve most ingeniously combined, transmit motion from the power shaft to the yoke in such a way as to give it a reciprocating longitudinal movement and an axially rotating movement, all properly timed. Since the yoke and looper-rod are really one, the movements of the yoke are reproduced in the looper-rod so that the looper at the end of it has the movements necessary to take up a loop, make clearance, carry across, present the loop, recede and return, and such of these movements as are transverse are brought about because the yoke and looper-rod together have an axial movement.

In defendants' device the yoke and looper-rod are not integral. The rod plays in bearings on the yoke, and does not itself move axially. The yoke, however, has an axial movement—defendants' expert so concedes—which operates to move the inner end of the rod one way, the outer end (beyond a sleeve into which the rod runs), taking a reversed movement, and thus giving to the looper itself the cycle of movement necessary. The difference between the two organizations is that in complainant's the whole rod including the forked part or yoke portion which receives motion transmitted from the power shaft rotates axially, whereas in defendants' device the yoke only rotates axially, but that movement of the yoke produces a movement of the rod which causes the looper to describe the movements specified in the claim—which it will be remembered does not require the looper itself to rotate axially. We think the things are equivalents, and are not satisfied that the equivalent device escapes from the claim because in the specifications the looper-rod and yoke are separately described and lettered. Originally, of course, they were constructed as separate pieces of metal, but they became one for purposes of operation when they were screwed together, and it is as a part in operation that the claim refers to the "looper-rod." The claim is functionally expressed. Axial rotation of the integral part, looper-rod plus yoke, operates to produce such a movement of the forward end of the rod as will carry the looper across the line of stitches, and back again. In defendants' device axial rotation of the yoke operates to produce such a movement of the end of the looper-rod (or rather of an extension thereof) as will carry the looper across the line of stitches and back again.

We are satisfied that claims 1 and 2 of this patent are infringed.

We do not think it necessary to add anything to Judge Hazel's discussion of the next patent, No. 705,326, except to say that from a study of the series of patents we are satisfied that the "rigid presser-foot" of the claims is a presser-foot, which is rigid when pressing: i. e., which does not yield when a thicker piece of goods is subjected to its pressing action, space for the insertion of such goods being afforded by the yielding of those other parts of the machine upon which the presser-foot is imposed. That it is moved somewhat by other parts of the machine at times when it is not engaged in pressing seems to be immaterial.

The question as to No. 679,553 is practically academic, the single "accidental" machine known as complainant's exhibit, defendants' machine infringes, but complainant concedes that defendants' commercial machines do not.

The decree is affirmed, with costs.