## BASSICK MFG. CO. v. READY AUTO SUPPLY CO., Inc.

District Court, E. D. New York.   October 28, 1927.

No. 2905.

**1. Patents** ☞202(1)—**That assignments of patents were subject to certain conditions subsequent in prior agreements held not to qualify assignee's title.**

That assignments of patents were made subject to certain prior agreements between assignor and third persons *held* not to qualify character of assignee's title, where right to obtain reassignment of the legal title given thereby under certain conditions was a condition subsequent, and plaintiff's title could therefore not be assailed, except by showing that reassignment had been made.

**2. Corporations** ☞316(5)—**Corporation's assignment of patent to its officers could not be collaterally attacked by defendant in patent infringement suit.**

Assignment of patent by corporation through its officers to themselves and others could not be collaterally attacked by defendant in patent in-

fringement suit, since such transfer was not void, but at most voidable by the corporation, an interested stockholder, or creditor, on a proper showing.

**3. Patents ☞198—Objection to assignment of patent that it contained inventor's middle initial, while patent omitted such initial, held not sustained.**

Where assignment correctly described patent by number, date of issue, and title, objection to assignment that it, in stating inventor's name, gave his middle initial, while patent omitted such initial, *held* not sustained; addition of the initial being mere surplusage.

**4. Patents ☞198—Assignments of patents by corporation need not be under seal.**

Assignments of patents are not required to be under seal; hence assignments of patents by corporation are not invalid for want of corporate seal.

**5. Names ☞18—There is rebuttable presumption that patent assignment to assignee of same name as plaintiff suing for infringement is to plaintiff.**

In patent infringement suit, defendant's contention that there was no evidence that assignee named in the assignment of the patent was the same corporation as plaintiff was not sustained, since identity of names presumes identity of person; presumption being rebuttable.

**6. Courts ☞96(1)—Though district court is not bound to follow decisions in other circuits, such decisions are persuasive.**

Though federal District Court is not compelled by comity to follow decisions of courts in other circuits, those decisions are persuasive.

**7. Patents ☞328—1,307,733, claims 3, 4, and 5, for high-pressure lubricating system, held valid and infringed.**

Gullborg patent, No. 1,307,733, claims 3, 4, and 5, for high-pressure lubricating system, *held* valid, as showing invention, and infringed.

**8. Patents ☞328—1,307,734, claims 14 and 15, for high-pressure lubricating system, held valid and infringed.**

Gullborg patent, No. 1,307,734, claims 14 and 15, for high-pressure lubricating system, *held* valid, as showing invention, and infringed.

**9. Patents ☞328—1,475,980, for high-pressure lubricating system, held valid and infringed.**

Zerk patent, No. 1,475,980, for high-pressure lubricating system, *held* valid, as showing invention, and infringed.

**10. Patents ☞177—That certain claims of combination patent covered one feature of invention, while others covered another, did not invalidate patent, as being for two independent inventions (35 USCA § 31).**

That certain claims of patent for high-pressure lubricating system covered combination of pump, flexible discharge conduit, couplings, and grease cup, or pin fitting, while other claims specifically covered grease cup or pin fitting embodied as an element in the other claims as a part of the combination thereof, did not make patent invalid, under Rev. St. § 4886 (35 USCA

§ 31 [Comp. St. § 9430]), as being for two independent inventions.

**11. Patents ☞165(5)—Each claim embodies complete invention, and is in effect an independent patent.**

Each claim of a patent embodies a complete invention, and in effect is an independent patent for the device it covers.

**12. Patents ☞25—That elements, when in combination, function simultaneously to produce desired result, makes patentable combination, rather than mere aggregation.**

That elements may usefully function separately, when not in combination, does not show mere aggregation, rather than patentable combination, where all the elements, when in combination, function simultaneously to produce the desired result.

**13. Patents ☞109—Supplemental oath held not required, where claims allowed in one application were by amendment transferred to another application.**

Where claims which had been found allowable in application for one patent were transferred by amendment from one application to another in compliance with rules and requirements of Patent Office and of the law relating to double patenting, defense that supplemental oath was required on such transfer was not sustained.

**14. Patents ☞312(3)—Testimony of one witness was sufficient to show patent infringement, where plaintiff waived answer under oath.**

Rule requiring two corroborating witnesses, or one witness and circumstances equal to the testimony of one witness, was abrogated by Supreme Court by equity rules promulgated in 1912, and effective February 1, 1913 (198 F. xix); hence where plaintiff in patent infringement suit specifically waived an answer under oath, the testimony of one witness was sufficient to show infringement.

**15. Patents ☞312(3)—Rule requiring corroborating witnesses does not apply in patent infringement suit, where bill waived oath, unless case was heard on bill and answer only.**

Even if there is a rule in equity requiring two corroborating witnesses, or one witness and circumstances equal to testimony of one witness, it does not apply in a patent infringement case, where plaintiff in its bill waived oath, unless case was heard on bill and answer only.

**16. Patents ☞178—Patent for an advance in the art is entitled to range of equivalents protecting invention.**

Even if patent is not a pioneer, but only for an advance in the art, it is entitled to such a range of equivalents as will protect the invention of the patent.

**17. Patents ☞240—That defendant is manufacturing under an improvement patent would not relieve it from infringement of plaintiff's patent.**

That defendant is manufacturing device accomplishing same results by same principles as

plaintiff's patent under an improvement patent would not relieve it from infringement of plaintiff's patent.

**18. Patents ☞243(1), 259(1)—Sale of parts suitable and intended for use in patented combination held direct and contributory infringement.**

Sale of parts suitable and intended for eventual use as part of a patented lubricating system to complete patented combination *held* to constitute both direct and contributory infringement, without showing that vendee actually carried out vendor's intention, and though sales were made to one purchasing for purpose of procuring evidence of infringement.

**19. Patents ☞255—Durable parts of patented device may be mended or repaired, but not replaced, and perishable elements may be replaced.**

Durable parts and elements of a patented combination may be mended or repaired, but not replaced, and quickly perishable or consumed elements may be replaced.

In Equity. Patent infringement suit by the Bassick Manufacturing Company against the Ready Auto Supply Company, Inc. Decree for plaintiff.

Lynn A. Williams, of Chicago, Ill., and Stephen H. Philbin, of New York City, for plaintiff.

Charles McC. Chapman, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity, in which plaintiff seeks relief by injunction and damages for the alleged infringement by the defendant of three patents issued by the United States Patent Office, viz.: No. 1,307,733, granted June 24, 1919, to Arthur V. Gullborg, for lubricating apparatus, on application filed February 11, 1918; No. 1,307,734, granted June 24, 1919, to Arthur V. Gullborg, for lubricating means, on application filed December 21, 1918; and No. 1,475,980, to Oscar Zerk, assignor to the Allyne-Zerk Company, of Cleveland, Ohio, for lubricating apparatus, on application filed November 21, 1922.

The defendant not only interposed the defenses of invalidity and noninfringement, but also tendered an issue as to the title of the plaintiff to each of the patents on which this suit is based, and moved to dismiss the bill for the alleged failure of plaintiff's title. The plaintiff claims title to each of said patents as assignee, and I will first consider the issue of title, because a determination of that issue, if in favor of the defendant, would terminate the suit.

The originals of the assignments, to copies of which defendant raised objections in its motion to dismiss, were produced by the plaintiff, and an inspection thereof by the defendant's counsel permitted. I have received in evidence, without objection, the agreement, dated December 13, 1918, between Arthur V. Gullborg and Alemite Metals Company, and the assignment of option contract of the same date, between Douglas F. Fesler and Arthur V. Gullborg, and have allowed photostatic copies of them to be substituted for the originals, and together they may be marked Plaintiff's Exhibit No. 36.

[1] The fact that some of the assignments of the Gullborg patents are made subject to said agreements does not qualify the character of the title transferred, because the right to obtain a reassignment of the legal title given therein, under certain conditions in said agreements expressed, is a condition subsequent, and the title of the plaintiff cannot be assailed except by showing that such reassignment has been made. Bliss v. Reed (C. C. A.) 106 F. 314, 318; D. M. Sechler Carriage Co. v. Deere & Mansur Co. (C. C. A.) 113 F. 285. There was no evidence offered to show any such reassignment.

[2] The assignment by the Alemite Die-Casting & Manufacturing Company to John S. Gullborg, C. M. Hedman, H. R. Hedman et al., cannot be attacked collaterally by the defendant because the said assignment, even if it was made by a corporation through its officers to themselves with others, was not void, but at most voidable by the corporation, an interested stockholder, or creditor, upon a proper showing; but there was no evidence offered to show that it has ever been avoided. Cowell v. McMillin (C. C. A.) 177 F. 25, 39; In re Franklin Brewing Co. (C. C. A.) 263 F. 512, 514; Lembeck & Betz Eagle Brewing Co. v. McAnarney (D. C.) 287 F. 927, 933; New Departure Mfg. Co. v. Rockwell-Drake Corporation (C. C. A.) 287 F. 328, 333.

[3] The objection of the defendant to the assignment made by the Alleyne-Zerk Company to the Bassick Manufacturing Company, that patent No. 1,475,980 states that the inventor was Oscar Zerk, while the assignment states that the name of the inventor was Oscar U. Zerk, is not sustained, because the patent is correctly described by number, date of issue, and title in the assignment, and the addition of a middle initial in the inventor's name is mere surplusage. That Oscar Zerk and Oscar U. Zerk are one and the same person seems to be beyond question, because, when called as a witness in the instant suit, he gave his name as Oscar U. Zerk, and swore that he was the inventor named in the patent in question.

[4] The contention of the defendant that any of the corporate assignments were invalid because of lack of the corporate seal was not sustained. Assignments of patents are not required to be under seal; therefore they are not invalid or void for want of a corporate seal. Gottfried v. Miller, 104 U. S. 521, 527, 26 L. Ed. 851; Westinghouse Co. v. Formica Co., 266 U. S. 342, 348, 45 S. Ct. 117, 69 L. Ed. 316.

[5] The contention of the defendant that there was no evidence to show that the assignee named in the assignment to "the Bassick Manufacturing Company" was the same corporation as the plaintiff was not sustained. Identity of names presumes identity of person. Stebbins v. Duncan, 108 U. S. 32, 47, 2 S. Ct. 313, 27 L. Ed. 641; Fowler v. Stebbins (C. C. A.) 136 F. 365, 367; Campbell & Zell Co. v. American Surety Co. (C. C.) 129 F. 491, affirmed (C. C. A.) 138 F. 531, certiorari denied 199 U. S. 607, 26 S. Ct. 747, 50 L. Ed. 331. The presumption is rebuttable, but no evidence was offered to rebut it, and plaintiff was entitled to rely on the presumption.

There is no necessity for any extended consideration of the assignment, Plaintiff's Exhibit 5f, because that assignment antedated the granting of the patent which was issued to the grantee, and thereby the assignee was vested with the legal title. The motion to dismiss the bill of complaint on the alleged ground of defects in the assignments, alteration in the title deeds, and because the chain of title to the plaintiff herein is clearly defective, is denied.

The patents in suit cover the Alemite and Alemite-Zerk lubricating equipment of the Bassick Manufacturing Company. The equipment in question is what is called high-pressure lubricating equipment and is of two different kinds.

The Alemite equipment in question in the instant suit consists of the pin fittings in and of themselves covered by claims 3, 4, and 5 of Gullborg patent, No. 1,307,733, and the combination of compressor, coupler, and pin fitting, covered by claims 14 and 15 of Gullborg patent, No. 1,307,734; the pin fitting being screwed into an opening leading to each of the bearings to be lubricated, the conduit attached to the compressor connected to the pin fitting by the coupler adapted for that purpose, and by operating the compressor the grease is forced through the conduit and coupler into the pin fitting, and thence to the bearing to be greased.

The Alemite-Zerk equipment in question in the instant suit consists of the Zerk type of fittings or nipples and a grease gun or compressor, terminating in a nozzle adapted to be connected with any one of the nipples by simply pressing the nozzle against the exposed end of the nipple; the metal to metal contact surfaces being so formed that a grease-tight connection is established and insured by a slight pressure of the nozzle against the end of the nipple.

With the exception of claims 3, 4, and 5 of patent No. 1,307,733, which cover the pin fitting in and of itself, the combinations covered by the claims of the patents in suit, on which the suit is based, are never completely assembled, except by the ultimate user of the lubricating equipment. The plaintiff does not make up and assemble any complete combination of compressor, coupler, and pin fitting, but separately catalogues prices, and sells the pin fittings, couplers, and compressors to make up the combinations claimed in the patents in suit.

This character of combination was sustained in the phonograph cases. Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U. S. 301, 29 S. Ct. 495, 53 L. Ed. 805; Id., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816. The patents in suit have uniformly been held valid in many actions in District Courts in the Sixth and Seventh Circuits, and in the Circuit Court of Appeals in both the Sixth and Seventh Circuits, as well as on a motion for preliminary injunction in at least one in this circuit. The prior art offered in the instant suit does not seem to differ from that which has been considered in other actions on these patents.

[6] Recognizing the right of this court to reach conclusions at variance with those of all the other federal courts who have considered and decided the questions raised by the defendant herein, I have given those questions careful consideration; but, while this court is not compelled by comity to follow the decisions of other courts, those decisions are persuasive. While I have considered it with care, I find no necessity for going at length into an analysis of all of the prior art, because on the issue of validity the only question presented is whether the introduction of the claimed novel element in the combination evidenced inventive genius, or mere mechanical skill, and I will therefore confine myself, on this point, to such of the prior art patents as were most strongly urged by the defendant, and will consider at length the defenses urged by the defendant.

I see nothing disclosed in the Wilson patent, No. 988,422, circulars, or devices, that teaches high-pressure lubrication, nor did the

Gullborg patents in suit follow the teachings of Wilson. The devices of the patents in suit in no sense follow the Wesco oil gun with a spout screw-threaded at the end, adapted to be screwed into the opening of the old-fashioned oil cup, after it had been removed from the bearings, and, after the oil had been poured in, the oil cup or plug screwed back into place. There was no teaching of pressure, but simply the pouring of oil or grease into housings and joints.

The Winkley patent, No. 1,201,414, the original of the Winkley reissue patent, No. 14,667, does not disclose all of the component parts of the Gullborg combination. The cup-shaped perforated washer, which is spring-pressed into sealing contact with the head of the fitting of the Gullborg combination, substituted in place of the cup with top and sides complete of the Winkley combination, gained for the Gullborg combination two additional functions: First, after the initial sealing was effected by the spring pressure it was intensified and made more efficient by the pressure developed in the liquid itself; and, second, by reason of the peculiar shape of the sliding member, and after it had been by pressure of the fitting pushed up a substantial distance, the spring upon the disunion of its parts would throw it sharply down to its position of rest, leaving a vacuum behind it, and into this vacuum there would be an upward inrush of air through the restricted opening, which would cause a suction which would pull up into the opening the grease which at the moment of disunion had been below the opening.

The Alley British patent, No. 21,893, of 1906, even if given its most favorable interpretation and the general suggestion that a bayonet joint connection might be substituted be followed, taught nothing to the patentee, because the nozzle was without any secondary resilient sealing means for its joint with the fitting, not even a packing for this purpose being shown, and if the screw threads were adapted to quick attachment, then extrusion of grease would be probable, if high pressure was used.

Richardson patent No. 8,251, offered by the defendant as against the Zerk patent in suit. Claims 2, 3, and 5 of the Zerk patent, which are the claims in suit, do not read upon Figures 4 and 5 of the Zerk drawings, but upon Figures 1 and 3, and I therefore do not see the force of defendant's comparison of Richardson with Figures 4 and 5 of the Zerk drawings. The addition of an old-fashioned oil can to Figure 3 of the Richardson patent did not teach the use of pressure, by which the grease unseats the valve and is forced into the bearings, because the spout of the oil can was depended upon to unseat the valve and allow the grease or oil to flow into the cup, in the hope that it would find its way to the bearings.

Skinner reissue patent, No. 10,064, does not teach the use of pressure, because here again the spout of the oil can is depended upon to unseat the valve, when it is pressed down, and allow the oil to flow over the head down to the shaft or journal bearing. There is no sealing of the joint between the spout of the oil can and the opening in the spring valve member, and no pressure can be developed. There is no dirt-cutting circumferential edge in or about the fitting, and no concavely spherical contact face in or about the nozzle.

Uhl patent, No. 1,205,686, does not, as contended by defendant, show the male member of a coupling so formed as "to provide a cutting edge identical with that shown in the Figures 3 and 6 of the Zerk patent in suit." The Uhl patent shows an automatic drain pipe coupling valve in which the contact is made between wide surfaces, both of which are spherical.

The Reimund & Kyle patent, No. 863,878, did not teach the use of pressure, nor was its teachings followed by the patentee of either of the patents in suit. The operation, as described as follows in the patent in suit, is entirely different:

"The nipple is secured in the hub, and the cup is removed and inverted, and the desired quantity of oil or lubricant is poured therein through the tube $d^2$, the air being displaced from said cup through the vent hole in the bottom. The cup can thus be very easily filled and its contents cannot spill. When inserted over the nipple, with the end of the tube $d^2$ inserted in the larger bore in said nipple, a slight rotation of the cup thereon secures the same firmly in place. When the pulley is brought into operation, the centrifugal tendency caused by the rotation thereof throws the lubricant to the apex of the cup, forcing the same into and filling the tube, and carrying a small quantity thereof through the passage in the nipple to the bearing."

Without regard to the many other distinctions of importance between the patents in suit and the prior art, there is not shown prior to Gullborg a grease cup or fitting having a bayonet "pin extending through said tubular member on both sides thereof," nor is there to be found prior to Zerk a lubricant fitting having a dirt-cutting circumferential

edge portion, adapted to make metal to metal and grease-tight, contact with the contacting surface of the nozzle. It was clearly shown by the testimony of the defendant's expert that the pin fitting having the pin extending through and projecting on both sides of the tubular member, as in the patents in suit, would cost about one-half as much to make and be twice as strong as other fittings having integral lugs or projections.

[7-9] In my opinion, the advance made in the art by the patents in suit represents invention, and not mere mechanical skill. For convenience I will consider the patents with reference to the other defenses urged by the defendant in the order in which the patents were granted.

### Patent No. 1,307,733.

Of this patent, claims 3, 4, and 5 are in suit, and read as follows:

"3. A grease cup comprising a tubular member having screwthreads at one end and having the other end flanged inwardly to provide a closure seat, a closure, a pin extending through said tubular member and on both sides thereof, and a spring confined between said pin and closure and tending to hold said closure on said seat.

"4. A grease cup comprising a tubular member having one end flanged inwardly to provide a closure seat, a closure, a pin extending through said tubular member and on both sides thereof, and a spring confined between said pin and closure and tending to hold said closure on said seat.

"5. A grease cup comprising a tubular member having one end flanged inwardly to provide a closure seat, a closure, a pin extending inwardly and outwardly from one wall of said tubular member, and a spring confined between the inner end of said pin and said closure to hold said closure on its seat."

[10] Defendant contends that this patent is invalid, on the ground that it contains claims for two separate and independent inventions, in contravention of section 4886 of the Revised Statutes (35 USCA § 31 [Comp. St. § 9430]), in that claims 1, 2, and 6 cover the combination of a pump, a flexible discharge conduit, couplings, and a grease cup or pin fitting, while claims 3, 4, and 5 are specifically for the grease cup or pin fitting, embodied as an element in claims 1, 2, and 6 as a part of the combination thereof. No authority is cited by counsel for defendant in support of his contention, and it does not seem to me to be sound.

Claims 1, 2, and 6 cover one branch or feature of the invention, and claims 3, 4, and 5 another branch or feature; but the invention as a whole is of a lubricating apparatus, and each of the claims are of some feature or features of such apparatus, either alone or in combination.

### Patent No. 1,307,734.

Of this patent, claims 14 and 15 are in suit, and read as follows:

"14. The combination with a grease cup comprising a tubular member having one end flanged inwardly to provide a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means coacting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease pump.

"15. The combination with a grease cup comprising a tubular member having a closure seat, a closure, a pin extending through said tubular member and from both sides thereof, and a spring confined between said pin and closure, and tending to hold said closure on its seat, of a grease pump having a discharge conduit, and means coacting with the ends of said pin for detachably connecting the discharge end of said conduit with said grease cup."

[11] The defendant contends that patent No. 1,307,734 is invalid, in view of patent No. 1,307,733, on the ground that the claims here involved cover the same subject-matter and differ in no patentable particulars. It is not necessary to cite authorities in support of the rule that each claim of a patent embodies a complete invention and in effect is an independent patent for the device it covers. Walker on Patents (5th Ed.) p. 232, says: "Only one valid original patent can be granted to an inventor on one invention; and if a plurality of such patents are thus granted, all except the first are void." And on page 233 Walker says: "Claims are coextensive which cover the same combination, of the same number, of the same parts, with the same features, though the functions which are mentioned in the claims are not coextensive."

There are no claims of the two patents, Nos. 1,307,733 and 1,307,734, which are coextensive, because no claim of patent No. 1,307,734 covers the same combination of the same number of parts with the same features

as those of a claim in patent No. 1,307,733. Claims 3, 4, and 5 of patent No. 1,307,733 are for the pin fitting in and of itself, and cover the combination of four elements. Claims 14 and 15 of patent No. 1,307,734 cover the combination, the four elements of claims 3, 4, and 5 of patent No. 1,307,733, together with the two additional elements, the grease gun and coupler. The combination is different and the functions are different.

It is unnecessary for me to describe the difference in combination and function of the other claims of the two patents, as none seem to me to be nearer than those I have mentioned.

The defense of double patenting is not new; still I have given it careful consideration, but it seems to me to have been fully answered by Judge Goddard, in the suit of Bassick Manufacturing Co. v. John Staff et al., District Court, Southern District of New York, July 9, 1926, and by the Circuit Court of Appeals of the Sixth Circuit, in the case of Sandy MacGregor Co. v. Vaco Grip Co., 2 F.(2d) 655.

The subject-matter of claims 14 and 15 of patent No. 1,307,734, and claims 3, 4, and 5 of patent No. 1,307,733, are not identical, nor are they directed to the same subject-matter, as I have hereinbefore shown. The new combination of claims 14 and 15 of patent No. 1,307,734 over claims 3, 4, and 5 of patent No. 1,307,733, by the addition of the elements of grease gun and coupler, complete the system and in my opinion constitute invention.

[12] The defendant also contends that both the Gullborg patents in suit are invalid, on the ground that they are for an aggregation rather than a combination. This does not seem to me to be true, because, while the fitting and coupler may usefully function separately, when not in combination, yet, when in combination all elements function simultaneously to produce the desired result, which clearly distinguishes the Gullborg patents in suit from the pencil with the eraser mounted on one end of it, in Reckendorfer v. Faber, 12 Blatch. 68, Fed. Cas. No. 11,625, cited by defendant. This question has been fully considered by the Sixth Circuit Court of Appeals, in Lyman Mfg. Co. et al. v. Bassick Mfg. Co. and six other cases, 18 F. (2d) 29.

[13] The defense urged by the defendant that a supplemental oath was required when claims 14 and 15 of patent No. 1,307,734, which had been found allowable in the application for patent No. 1,307,733, were by

amendment transferred to the application for patent No. 1,307,734, does not seem to me to be sustained, because the transfer of these claims by amendment was in compliance with the rules and requirements of the Patent Office and of the law relative to double patenting.

With reference to both of the Gullborg patents in suit, claims 3, 4, and 5 of patent No. 1,307,733, which were originally claims 13, 14, and 15, were allowed as filed in the original application. They were never canceled and never modified by any amendment. Claims 14 and 15 of patent No. 1,307,734 were transferred from the application for patent No. 1,307,733 to application for patent No. 1,307,734. They were never canceled nor amended, except in that they were transferred by amendment without change of words. There was, therefore, no estoppel or limitation by reason of any act of the patentee or his assignee in the progress of the patent through the Patent Office.

### Patent No. 1,475,980.

Of this patent, claims 2, 3 and 5 are in suit, and read as follows:

"2. In a lubricating apparatus, the combination with a lubricant receptacle element of a lubricant reservoir for supplying lubricant thereto, means to put the lubricant in the reservoir under pressure, a lubricant feeding nozzle element, said reservoir communicating lubricant under pressure thereto, said receptacle element and said nozzle element having co-operative substantially noncompressible contact faces and openings therethrough, the nozzle contact face having a concavely spherical surface, the other contact face having a dirt cutting circumferential edge portion adapted to be embraced within the spherical surface of the nozzle face and providing the sole contact therewith when the nozzle is pressed against the receptacle element from any one of a plurality of angularly different directions, to make a sealed, substantially nonyielding, lubricant conducting connection between the face openings.

"3. In a lubricating apparatus, the combination with a lubricant receptacle element of a lubricant gun for supplying lubricant under pressure thereto, said gun having a lubricant feeding nozzle element, said receptacle element and said nozzle element having co-operative substantially noncompressible contact faces and openings therethrough, one of said contact faces having a concavely spherical surface, the other contact face having a dirt cutting circumferential edge por-

tion adapted to be embraced within the spherical surface of the other face and providing the sole contact therewith when the nozzle is pressed against the receptacle element from any one of a plurality of angularly different directions, to make a sealed, substantially nonyielding lubricant conducting connection between the face openings, and an outwardly inclined guide for one of said elements to direct the other element contact face portion thereto."

"5. In a lubricating apparatus, the combination with a lubricant receptacle of a lubricant gun comprising a container and a rigid lubricant feeding nozzle secured directly thereto, said receptacle and said gun nozzle having co-operative substantially non-compressible contact faces and openings therethrough, the nozzle contact face having a concavely spherical surface, the receptacle contact face adapted to be received within and to engage the concave spherical surface of the nozzle face and having a dirt-cutting circumferential edge portion providing the sole contact therewith, when the gun is directed against the receptacle and manual pressure exerted against the container from any one of a plurality of angularly different directions, to make and manually maintain a sealed, substantially non-yielding, lubricant conducting swiveling connection between the face openings."

The defense that the disclosure of this patent is unintelligible was not sustained, because I agree with the plaintiff's attorney that the Zerk patent discloses a fitting having a dirt-cutting circumferential edge portion, and that the nozzle of the compressor has a spherically concave surface adapted to contact with the circumferential edge portion of the fitting, to make a metal to metal joint, which is grease tight, even under pressure of thousands of pounds per square inch.

The claims on which this suit is based cover the fitting, the nozzle, and lubricating reservoir for supplying lubricant thereto, and the gun or compressor. The file wrapper and contents of this patent were not offered in evidence, and therefore there can be no finding of estoppel or limitation of the patent in its progress through the Patent Office. I therefore find that the several patents in suit are valid.

[14] The contention of the defendant that the plaintiff has not sufficiently proved the defendant's acts upon which the charge of infringement is based, under an alleged rule of law requiring two corroborating witnesses, or one witness and circumstances equal to the testimony of one witness, was not sustained.

The rule referred to by the defendant was abrogated by the Supreme Court by the equity rules promulgated in the year 1912 (see 198 F. xix), which became effective February 1, 1913, and inasmuch as the plaintiff specifically waived an answer under oath, the testimony of one witness was sufficient.

[15] Even if there was such a rule in force in equity actions generally, it does not apply in a patent case, where the plaintiff in its bill waived the oath, unless the case was heard on the bill and answer only. Walker on Patents (5th Ed.) p. 646, § 581; Slessinger v. Buckingham (C. C.) 17 F. 454; Ford v. Taylor (C. C.) 137 F. 149; Toledo Metal Wheel Co. v. Foyer Bros. & Co. (C. C. A.) 223 F. 350.

We thus come to the question of infringement. The pin fitting sold by the defendant, which is alleged to infringe claims 3, 4, and 5 of Gullborg patent No. 1,307,733, which covers the pin fitting in and of itself, differs from those of the plaintiff and plaintiff's patent only in having the location of the valve closing spring transposed or reversed with respect to the cross-pin, and in having a U-shaped metal straddler for transmitting the pressure of the spring around the sides of the cross-pin of the ball valve.

[16] This, in my opinion, is a mere transposition or reversal of the location of the valve spring, and is clearly an equivalent of the plaintiff's pin fitting. Walker v. Giles (C. C. A.) 218 F. 637; Anchor Cap & Closure Corp. v. Pritchard (D. C.) 232 F. 156; Dowagiac Mfg. Co. v. Minnesota Moline Plow Co. (C. C. A.) 118 F. 136. Even if plaintiff's patent is not a pioneer patent, but only for an advance in the art, it is entitled to such a range of equivalents as will protect the invention of the patent. Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122.

Defendant contends that the Circuit Court of Appeals of the Sixth Circuit, in Lyman Mfg. Co. et al. v. Bassick Mfg. Co., 18 F. (2d) 29, restricted the invention in such a way that it would be avoided in case the "spring abutment is otherwise furnished"; that is, furnished by means other than the cross-pin itself. This contention is not, in my opinion, sustained, because in that case the court said: "When the pin becomes merely arms projecting from each side, and the spring abutment is otherwise furnished, we have only the already common bayonet joint member"—thus holding that we have only the common bayonet joint when two conditions are met, viz., when the pin becomes merely arms projecting from each side, and

when the spring abutment is otherwise furnished.

While in the device sold by the defendant the abutment for the spring is furnished by means other than the cross-pin, that pin does not become merely arms projecting from each side, in the form of integral lugs or otherwise. The novel element of the combination was the cross-pin extending through the tubular member and projecting on both sides thereof, and is found in the fitting manufactured by the Larkin Company and sold by the defendant to Mr. Wright. The attempt to so limit the construction of the claims was denied by the Circuit Court of Appeals in the Seventh Circuit, in Larkin Automotive Parts Co. et al. v. Bassick Mfg. Co., 19 F.(2d) 944.

[17] Defendant contends that it is manufacturing under the De Loache patent, No. 1,-623,097; but this, even if it be so, does not relieve the defendant from infringement, because the most that can be claimed for the De Loache patent is that it is for an improvement, and in my opinion it accomplishes the same results by the same principles as the patent in suit. Herman v. Youngstown Car Mfg. Co. (C. C. A.) 191 F. 579, 584; Columbia Wire Co. v. Kokomo Steel & Wire Co. (C. C. A.) 143 F. 116; Ries v. Barth Mfg. Co. (C. C. A.) 136 F. 850, 853; J. F. Rowley Co. v. Columbus Pharmacal Co. (C. C. A.) 220 F. 127, 137; Acme-Keystone Mfg. Co. v. Dearborn (C. C. A.) 185 F. 503.

The fitting sold by the defendant, which is alleged to infringe claims 2, 3, and 5 of the Zerk patent, No. 1,475,980, is identical with the Zerk type fitting, except for the fact that plaintiff finishes its Zerk type fitting or nipples in dull nickel plate, and the Larkin Company finishes the Zerk type fitting, sold by the defendant to Mr. Wright, in bright polished nickel plate.

The Adams compressor, sold by the defendant to Mr. Wright, which is alleged to infringe both claims 14 and 15 of the Gullborg patent, No. 1,307,734, and claims 2, 3, and 5 of Zerk patent, No. 1,475,980, was of the same type as one of the compressors manufactured and sold by the plaintiff, and was supplied with a conduit and bayonet coupling adapted for attachment to the Alemite fitting of the plaintiff, and the imitation Alemite fitting manufactured by the Larkin Company and sold by the defendant, and the same compressor was also supplied with the Zerk type nozzle, which could be substituted for the flexible conduit of the Alemite coupler, and was adapted for attachment to the Zerk fitting of the plaintiff and imitation Zerk fitting manufactured by the Larkin Company and sold by the defendant.

The coupler sold by the defendant is identically like the Alemite coupler of the patent in suit, and the defendant sold to Mr. Wright every essential part of the combination of the Gullborg patents in suit. The defendant sold to Mr. Wright all the essential parts of the combination of the Zerk patent in suit, and such parts were in precise conformity with the disclosures of that patent.

[18] By these means the Adams compressor was made available for use in conjunction either with the Alemite type-fitting or imitation thereof, and with the Zerk type-fitting or imitations thereof, and it is by the use of the Adams compressor with the Alemite conduit and bayonet coupler, or the Zerk type nozzle and the Alemite or Zerk type-fittings, that the combination of the patents in suit are completed.

The right to manufacture and sell the Adams type compressor, if equipped to perform useful service other than in conjunction with the Alemite or Zerk type fittings, cannot be denied because the plaintiff does not seem to have a claim for the compressor in and of itself, but the evil is in equipping the compressor with or adapting it to be equipped with a conduit and bayonet coupler or nozzle, which not only makes possible its completing the combination of the plaintiff's patents in suit, Gullborg, No. 1,307,734, and Zerk, No. 1,475,980, but, so far as I can find from the evidence, was intended for that purpose.

The evidence of Mr. Wright as to the purchases made by him from the defendant makes it clear that the compressor with the Alemite type conduit and coupler, and also with a Zerk type nozzle, were sold by the defendant with the intent that they should be used either with genuine or imitation Alemite or Zerk fittings, and thus complete the combination. This constituted infringement both direct and contributory, and it was unnecessary to show that the vendee actually carried out and completed the vendor's intention. Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712; Parsons Non-Skid Co. v. Atlas Chain Co. (C. C. A.) 198 F. 399, 400; Wallace v. Holmes, 29 Fed. Cas. 74, No. 17,100.

This is true, even though the sales be made to a purchaser who bought at the direction of the plaintiff for the purpose of procuring evidence of infringement. Hutter v. De Q. Bottle Stopper Co. (C. C. A.) 128 F. 283; Chicago Pneumatic Tool Co. v. Philadelphia Pneumatic Tool Co. (C. C.)

118 F. 852; James E. Tompkins Co. v. New York Woven Wire M. Co. (C. C. A.) 154 F. 669; Thomson Meter Co. v. National Meter Co. (C. C.) 106 F. 519; National Meter Co. v. Thomson Meter Co. (C. C.) 106 F. 531.

That the Adams compressor is capable of use when equipped with other couplings and nozzles than those adapted to connect with Alemite or Zerk fittings may well be true, and its use when so equipped and under such conditions would not be the subject of complaint; but from the evidence in this action it plainly appears that the compressor sold to the defendant was equipped with the particular conduit and bayonet coupler for the purpose of adapting it to use with the Alemite fittings, genuine or imitation, and with the particular nozzle to adapt it for use with the Zerk fittings, genuine or imitation, and the sale of the compressor under such circumstances constituted infringement.

The defendant directly infringed in selling the pin fittings or all of the articles necessary to complete the combinations of either Gullborg patent, No. 1,307,734 or the Zerk patent, No. 1,475,980, and contributorily infringed when it sold any of the articles with the intent that they should be used to complete the combinations covered by the claims in suit of said patents.

[19] Defendant, however, contends that it has the right to sell to those who have been originally supplied with the systems, or either of them, manufactured by the plaintiff, parts necessary to replace any which have been damaged, lost, or destroyed, what it calls repairs and replacements. This right appears to have been denied by the courts in all of the suits brought on either of the patents in suit, except in one instance, in the case of Bassick Mfg. Co. v. Larkin Automotive Parts Co., in the District Court of the Southern District of Ohio, Western Division, and on appeal that part of the decree which sustained the defendant's claim of such right was reversed.

There have been many, and in some sense they may be called conflicting, decisions on the subject of repairs and replacements, but it seems to me to be the law that the purchaser of a patented machine, a combination of elements, from the patentee, has the right to use that machine until it has lived its normal life in service, long or short as the case may be. He has the right to mend it, if need be, to continue that service. Foglesong Mach. Co. v. J. D. Randall Co. (C. C. A.) 239 F. 893; Pyle Nat. Bank v. Oliver Electric Mfg. Co. (C. C. A.) 281 F. 632; Shickle, Harrison & Howard I. Co. v. St. Louis Car Coupler Co. (C. C. A.) 77 F. 739; F. F. Slocomb & Co. v. A. C. Layman Mach. Co. (D. C.) 227 F. 94; Hess-Bright Mfg. Co. v. Bearings Co. (D. C.) 271 F. 350.

To go beyond such mending is reconstruction and an infringement. Davis Electrical Works v. Edison Electric Light Co. (C. C. A.) 60 F. 276; Leeds & Catlin Co. v. Victor Talking Mach. Co., supra; Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C. A.) 80 F. 712; Cotton Tie Co. v. Simmons, 106 U. S. 89, 1 S. Ct. 52, 27 L. Ed. 79; National M. Casting Co. v. American Steel Foundries (C. C.) 182 F. 626; Heyer Duplicator Co., Inc., v. Ditto (C. C. A.) 6 F. (2d) 578; Richardson v. Noyes, 20 Fed. Cas. 723, No. 11,792; American Cotton Tie Supply Co. v. McCready, 17 Blatch. 291, Fed. Cas. No. 295; National Phonograph Co. v. Fletcher (C. C.) 117 F. 149; Connecticut Telephone & Electric Co. v. Automotive E. Co. (D. C.) 14 F. (2d) 957.

This last statement is subject to the exception that, when one of the minor and relatively inexpensive elements is quickly perishable or subject to rapid deterioration in use, then that element may be replaced as often as it is consumed, throughout the life of the machine of which it is a part. Wilson v. Simpson, 9 How. 109, 13 L. Ed. 66; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; Heyer v. Duplicator Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189; Farrington v. Board of Water Commissioners, 8 Fed. Cas. 1086, No. 4,687; Wagner Typewriter Co. v. F. S. Webster Co. (C. C.) 144 F. 405; O'Rourke Engineering Const. Co. v. McMullen (C. C.) 150 F. 338; Williams v. Barnes (C. C. A.) 234 F. 339; Morgan Gardner E. Co. v. Buettner & Shelburne M. Co. (C. C. A.) 203 F. 490.

Defendant does not seem to question the law as I have stated it; in fact, most of the cases it cites as authority I have cited, and those cited by it do not lay down a different rule. Stated briefly, the law, therefore, is that durable parts and elements may be mended or repaired, but not replaced, and quickly perishable or consumed elements may be replaced.

Realizing as I do that each case as it arises must be decided in the light of the facts and circumstances presented, I cannot find on the evidence in this case that any of the parts are quickly perishable or consumed elements, which may be replaced without infringing. Of course, repairs may be made to any of the parts that may be damaged; but to allow replacement of any part would, if carried to

its logical conclusion, allow the replacement of all parts, from time to time, thus extending the life of the combination indefinitely and far beyond its natural life.

To permit the sale of imitation pin fittings, to replace those originally installed, which in and of themselves are covered by a patent in suit, simply because by hard usage they have been damaged, would be to destroy the whole protection of the Gullborg patent, No. 1,307,733 in suit. What defendant claims as a right, if conceded, would in effect deprive the plaintiff of the legitimate benefits of all the patents in suit, because, once a car was equipped with the plaintiff's lubricating system, the defendant could sell every part of the combination by simply marking them as for replacement and repair only.

This is contrary to the rule laid down by the courts, which I believe to be the law. The fittings, compressors, conduits, couplings, and nozzles may be mended, if damaged. The replacing of damaged, lost, or destroyed parts with new would not be mending or making repairs, but in effect extending the use of the machine far beyond its normal life in service, and if the replacements be on a par with the sales to the witness Wright in the suit at bar, it would amount to replacing the whole combination. To state the proposition seems to bring its own refutation.

This contention the defendant has not sustained. The sale of new parts of the combination to replace any damaged, lost, or destroyed, with the intent that they should be used in completing plaintiff's combination, in my opinion, constitutes contributory infringement (Leeds & Catlin v. Victor Talking Mach. Co., supra), and the sale alone of the pin fittings, which I have found infringed claims 3, 4, and 5 of the Gullborg patent No. 1,307,733, constitutes infringement.

A decree may be entered in favor of the plaintiff, with costs.