**ETTEN et al.**

v.

**LOVELL MFG. CO. et al.**
**Civ. A. No. 55.**

United States District Court
W. D. Pennsylvania.
April 30, 1954.

Charles F. Meroni, of Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill., Isaac J. Silin, Erie, Pa., for plaintiffs.

Frank Zugelter, of Zugelter & Zugelter, Cincinnati, Ohio, Ralph Hammar, Erie, Pa., for defendants.

FOLLMER, District Judge.

This matter is again before the Court on mandate from the Court of Appeals which vacated the judgment of this Court of March 8, 1950 in its entirety to the end that this Court would be unhampered in its consideration and disposition of the case in conformity with suggestions made in the opinion of the Court of Appeals. 184 F.2d 737.

Following receipt of mandate, considerable additional testimony, oral and documentary, directed solely to the question of title and legal interest as it affected the jurisdiction of the Court, was received.

I reaffirm findings of fact made in this cause on February 28, 1949, 83 F. Supp. 178, and on the basis of all the evidence now before me, I make the following additional

Findings of Fact

1. Plaintiff, Nicholas L. Etten, on May 16, 1929 entered into a License and Royalty Agreement (Plaintiffs' Exhibit B–B) with Floyd L. Chamberlain by which the latter was licensed under certain inventions and patents of Etten relating to devices manufactured by the Chamberlain Corporation, and in Paragraph IX thereof included future inventions. The said agreement has since its execution remained continuously in force and effect. It was entered of record June 17, 1932 in the Patent Office in Liber D153, Page 541.

2. The Etten applications and patent involved in the instant suit are within the provisions of Paragraph IX of said agreement relating to future inventions.

3. On October 16, 1929 Floyd L. Chamberlain executed an assignment (Plaintiffs' Exhibit C–C) by which he transferred all his right, title and interest in the License and Royalty Agreement of May 16, 1929 to the plaintiff, Chamberlain Corporation, an Iowa corporation, excepting a partial reversionary interest which was later assigned to Etten (Plaintiffs' Exhibit I–I).

4. Nicholas L. Etten has remained in the employment of Chamberlain Corporation continuously from the date of the Floyd L. Chamberlain assignment to the said corporation to the present time.

5. Pursuant to the provisions of Paragraph IX of said License and Royalty Agreement of May 16, 1929, Nicholas L. Etten, on October 16, 1935, executed an assignment (Plaintiffs' Exhibit A–A) to Chamberlain Corporation assigning his entire right, title and interest in and to his inventions relating to "Safety Release Mechanism" (Serial No. 648,620) and "Wringer Release Mechanism" (Serial No. 38,932) which are the inventions on which Letters Patent were prayed for by plaintiff in Paragraphs 4 and 5 of the original complaint herein and the former of which is the original application on the invention upon which Etten reissue application, S.N. 167,775, involved in the R.S. § 4915, 35 U.S.C.A. §§ 145, 146, action is predicated and is the invention covered by Etten Letters Patent No. 2,054,970 involved in the suit under R.S. § 4918, 35 U.S.C.A. § 291, added by amendment to the bill of complaint. The assignment was made "subject", however, "to the terms and conditions" of said agreement of May 16, 1929 which reserved, therein and thereby, certain royalty and reversionary interests and rights of suit to Nicholas L. Etten.

6. Nicholas L. Etten, since the inception of the License and Royalty Agreement of May 16, 1929, has been receiving royalties under and as provided for in the aforesaid agreement, including the yearly minimum royalty of $5,000 pursuant to Paragraph I (4) of said agreement.

7. Etten reserved unto himself the right to appear in litigation and to protect the patents covered by the License and Royalty Agreement of May 16, 1929 (Plaintiffs' Exhibit B–B) under the terms of Paragraph III, which reads in part as follows:

"* * * PROVIDED, that first party is given notice of any suit pending in which the validity of said patent is challenged or involved and that such notice is given in time to enable first party to appear in said litigation and protect said patent."

8. Chamberlain Corporation, in the late summer and early fall of 1943, advised Nicholas L. Etten that it would not become a party to a suit under R.S. § 4915 to procure the granting and issuance of Letters Patent covering the inventions of Nicholas L. Etten and involved in the complaint in the instant case, and on or about September 22, 1943 assigned the entire legal title to said inventions and the pending patent applications thereon, Serial Nos. 167,775 (reissue) and 38,932, to Nicholas L. Etten (Plaintiffs' Exhibits G–G and H–H) and on October 22, 1943 Etten instituted the instant suit pursuant to R.S. § 4915.

9. On or about September 22, 1943, in the Chicago office of Charles K. Woodin (a patent attorney who died in 1950) George R. Keltie, as President of Chamberlain Corporation, executed assignments transferring the entire legal title to said applications, Serial Nos. 167,775 (reissue) and 38,932, to Nicholas L. Etten, and which assignments were lost or misplaced and after diligent search cannot now be found.

10. The facts and circumstances in connection with the nonexistence, by reason of loss or misplacement, of the assignments from Chamberlain Corporation to Etten and the subsequent execution of the nunc pro tunc assignments (Plaintiffs' Exhibits G–G and H–H) were correctly set forth in letter of Chamberlain Corporation by its President, George R. Keltie, to Nicholas L. Etten under date of July 31, 1946 (Defendants' Exhibit W–22), excepting that

the exact date of the execution of the lost assignment as established by evidence subsequently taken was September 22, 1943.

11. The content of the 1943 assignments is correctly set forth in the nunc pro tunc assignments of August 30, 1946 (Plaintiffs' Exhibits G–G and H–H) and which said nunc pro tunc assignments were recorded in the Patent Office on September 6, 1946, respectively in Liber Y207, Page 246, and Liber Y207, Page 248.

12. Charles F. Meroni, Esq., who just prior to the filing of the suit herein was retained as attorney for plaintiff, wrote a report under the letterhead of The Firm of Charles W. Hills, dated October 7, 1943 (Defendants' Exhibit W–12), relative to the filing of suits to procure the granting of Etten's patents on the inventions herein involved, which report confirmed, in writing, a previous conference with Mr. Woodin on September 27, 1943, and which, among other things, said:

"* * * as we understand the matter, the Etten application is not assigned to the company, * * *."

Such understanding was predicated upon the fact that Mr. Woodin had prepared and had in his possession the lost assignments and had in such conference with Mr. Meroni informed him that the title to the said patent and applications were in Etten.

13. The defendants have no interest in the Chamberlain Corporation either as stockholders, directors or creditors.

14. On March 1, 1944, written assignments were prepared and executed by Nicholas L. Etten (Plaintiffs' Exhibits E–E and F–F), assigning the legal title of the Etten inventions, applications and patent here in suit (Application S.N. 38,932, Reissue Application S.N. 167,775 and Etten Patent No. 2,054,970) to the Chamberlain Corporation, subject, however, to the terms and conditions of the so-called Floyd L. Chamberlain License and Royalty Agreement of May 16, 1929 (Plaintiffs' Exhibit B–B). The said assignments were recorded in the Patent

Office on April 1, 1944, respectively in Liber V198, Page 645, and Liber V198, Page 646.

15. Under date of March 29, 1944, Lena E. Chamberlain, surviving spouse and sole heir at law of Floyd L. Chamberlain, deceased, assigned to Nicholas L. Etten all of her right, title and interest in the License and Royalty Agreement of May 16, 1929, and Letters Patent and inventions forming the subject matter of said agreement, "including my right to receive the one-half interest which said agreement provides shall revert to Floyd L. Chamberlain under the terms of the provisions of said agreement hereinabove set out." (Plaintiffs' Exhibit I–I)

16. At the time of the institution of the R.S. § 4915 action, on October 22, 1943, legal title to the patent and applications hereinabove referred to and involved in this suit were in Nicholas L. Etten.

17. At the time of the amending of the complaint to include a cause of action under R.S. § 4918, the plaintiff, Etten, was receiving royalties under the License and Royalty Agreement of May 16, 1929, and was also the owner of the full reversionary interest under said agreement and the assignment of Lena E. Chamberlain entitling him to all of the rights under the patent in the event that royalties were not paid to him as provided for in the agreement, and had also reserved unto himself in the said License and Royalty Agreement of May 16, 1929 the right to appear in litigation and to protect the applications and patents on his inventions.

18. Chamberlain Corporation became the owner of the legal title of the aforesaid Etten applications and patent here in suit by virtue of the reassignment of said patent and applications to the Chamberlain Corporation on March 1, 1944 (Plaintiffs' Exhibits E–E and F–F) and has continued in said ownership to the present time.

19. There was no intention to conceal on the part of Etten or Chamberlain Corporation in connection with the lost or misplaced assignments herein referred to, and on the discovery of the lapse in the chain of title to the patent and applications the parties took prompt action to place on record the documents to correctly portray the complete chain of title and to confirm what had previously been done in connection therewith.

20. As to the defense of res adjudicata raised by defendants predicated on an action instituted October 21, 1943, in the United States District Court for the District of Columbia by Nicholas L. Etten v. Lovell Manufacturing Company and others (Defendants' Exhibit E–1), the Court finds that:

(a) The defendants in the instant suit were defendants in the District of Columbia suit and were fully conversant with all that transpired in connection therewith. Furthermore, defendant Lovell Manufacturing Company appeared specially therein and only for the purpose of attacking the jurisdiction of the court, and no answer on the merits was ever filed.

(b) The transcript of that action (Defendants' Exhibit E–1) is not a complete record inasmuch as the docket entries show that motion of Lovell Manufacturing Company filed November 9, 1943, to dismiss complaint had attached thereto as Exhibit "A" affidavits of A. M. Doll, F. J. Stark and G. L. Jantz, which affidavits are not a part of the transcript introduced by the defendants in this cause.

(c) The motion itself (Paragraph 4) shows that the affiants, G. L. Jantz and F. J. Stark, disclaimed any interest whatsoever in the proceedings, and that the affidavit of A. M. Doll, President of Lovell Manufacturing Company (Paragraph 2), indicated that said Lovell Manufacturing Company was a resident of the City and County of Erie, and State of Ohio (obviously a typographical error and should have read State of Pennsylvania).

(d) The dismissal therefore was predicated upon the fact that the court was

without venue jurisdiction of Lovell Manufacturing Company and had no relation whatsoever to the merits of the case.

(e) The order of dismissal entered in the Washington suit, No. 21,688, carries on its face the consent of J. Preston Swecker, Attorney for Plaintiff, and W. W. Cochran, Attorney for Conway P. Coe, Commissioner of Patents.

21. All of the findings of fact made in the opinion of this Court dated February 28, 1949, and filed March 2, 1949, 83 F.Supp. 178, are adopted in haec verba and are made part hereof in their entirety.

22. On May 3, 1951, with the approval of the Court, the parties, by their respective counsel, stipulated, inter alia, as follows:

"It is further agreed that Chamberlain Corporation of Waterloo, Iowa, may be added to and considered as a Party-Plaintiff in this suit as of the date of the filing of its appearance herein on February 1st, 1950."

23. Under date of May 10, 1932, Chamberlain Corporation entered into a license agreement with Voss Bros. Mfg. Co., an Iowa corporation, (Defendants' Exhibit W–24) covering certain applications for United States Letters Patent pertaining to the product known as "Chamberlain Ironer, Model 'V' ".

24. Contemporaneously with the execution of the said Voss license agreement, to wit, May 10, 1932, Nicholas L. Etten, Floyd L. Chamberlain and Chamberlain Corporation entered into a supplementary agreement in the form of a letter with said Voss Bros. Mfg. Co. (Defendants' Exhibit W–26) giving to the latter certain substitutionary rights under the License and Royalty Agreement of May 16, 1929 (Plaintiffs' Exhibit B–B) in the event of default by Chamberlain Corporation in the payment of royalties to Etten. It is perfectly obvious that this agreement relates solely and specifically to the applications for patents covering "Chamberlain Ironer, Model 'V' " referred to above in the Chamberlain Corporation-Voss agreement of May 10, 1932 (Defendants' Exhibit W–24) and was not intended to nor did it have any relation whatsoever to the applications and patent involved in the instant case.

## Discussion

The pertinent facts of this case are fully set forth in the opinion of this Court under date of February 28, 1949, filed March 2, 1949, 83 F.Supp. 178, and the opinion of the Court of Appeals, 3 Cir., 184 F.2d 737.

As in the proceedings following the receipt of the mandate from the Court of Appeals, this discussion will likewise be limited to the question of title and legal interest as it affected the jurisdiction of the Court.

An exhaustive and detailed study of the "labyrinth of assignments, titles and interest" in their chronological order and considered in the light of the testimony in relation thereto, presents the following picture:

The License and Royalty Agreement of May 16, 1929 (Plaintiffs' Exhibit B–B) while dealing specifically with an ironing machine or press in connection with which Etten had applied for a patent, also provided, in Paragraph IX thereof, that Etten would "assign to second party (Floyd L. Chamberlain) any and all applications for or Patents issued upon other inventions of first party (Nicholas L. Etten) pertaining to all processes or devices, except plastic Moulding material, now being manufactured in the shops or works of the Chamberlain Corporation, or its assigns." The agreement also provided for the payment of minimum royalties to Etten in the sum of $5,000 per year, not only on the said ironing machines or presses but upon the other future improvements and inventions which would necessarily include those involved in the instant case.

Paragraph II of said License and Royalty Agreement sets forth the relative position of the parties in the event of failure of the second party or his as-

signees to pay the royalties therein provided for and concludes with this statement, " * * * and no assignment of said Letters Patent or of the rights created under this contract shall, in case of a forfeiture declared against an assignee of second party, be held or be construed to interfere with the reversion of an undivided one-half thereof to Floyd L. Chamberlain, as herein provided."

The phrase "rights created under this contract" in said Paragraph II read in connection with Paragraph IX thereof clearly includes within its scope not only the rights and royalties in connection with the ironing machine or press but upon all other future improvements and inventions of the said Etten. That this was the intention of the parties is perfectly apparent throughout all of their dealings.

Defendants have made much of the so-called "Proviso Clause" of Paragraph III of the License and Royalty Agreement, which reads as follows:

"* * * PROVIDED, that first party is given notice of any suit pending in which the validity of said patent is challenged or involved and that such notice is given in time to enable first party to appear in said litigation and protect said patent."

They claim that under this clause plaintiff was limited to becoming a party to a suit instituted by some one else for the sole purpose of protecting his patent.

I feel this construction is entirely too narrow. A careful reading of the License and Royalty Agreement from its four corners taken in connection with the conduct of the parties in relation thereto, clearly indicates that the primary purpose, in spite of any ambiguity which may exist in the contract, was to preserve in Etten full, complete and adequate remedies and means to protect, preserve and sustain the validity of his numerous applications and patents, including those for improvements and inventions which within the contemplation of the 1929 agreement he might be making in the future. It is within the scope of those contemplated future improvements and inventions that the applications and patent involved in the instant suit are encompassed. It is my opinion that it was the intention of all parties concerned that Etten should have plenary power to protect his interests and that it should not be conditioned upon the mere whim or caprice of some other party.

At the expense of breaking the chronological sequence of the various transactions, mention should here be made of the contention of the defendants that, in connection with the litigation rights and the reversionary interests of Etten under the said agreement, consideration must be given to the rights created in Voss Bros. Mfg. Co. (Defendants' Exhibits W–24 and W–26). Short shift can be made of this contention. The License and Royalty Agreement between Chamberlain Corporation and Voss (Defendants' Exhibit W–24) is limited in its application to one matter, namely, the "Chamberlain Ironer, Model 'V' ", and required the licensee, Voss, to purchase certain parts for such ironer from the Chamberlain Corporation. Since this ironer was within the scope of the 1929 License and Royalty Agreement, Voss might have lost the benefit of the License and Royalty Agreement if a default had occurred by Chamberlain Corporation in the payment of the royalties. Consequently, to protect Voss, on the same date, May 10, 1932, a supplemental agreement in the form of a letter (Defendants' Exhibit W–26) was entered into between Nicholas L. Etten, Floyd L. Chamberlain, Chamberlain Corporation and Voss Bros. Mfg. Co., which referred to the general substance of the 1929 License and Royalty Agreement and stated,

"The purpose of this letter is to set forth our understanding in the event of a default by Chamberlain Corporation under said contract of May 16th, 1929, so as to give said Etten the right to cancel said Agreement, as aforesaid."

The so-called letter-agreement then refers to the licensing agreement with

Voss (Defendants' Exhibit W–24) which it will be remembered covers only the "Chamberlain Ironer, Model 'V'" and provides for the right in Voss, in the event of default by Chamberlain Corporation in fulfilling its obligations under the 1929 License and Royalty Agreement, at its option within thirty days after cancellation of the agreement by Etten "to assume the interests of said Chamberlain Corporation in said Agreement and to thereby acquire all the benefits and obligations set forth in said Agreement." The agreement then stated, "Nothing herein shall be construed to deprive said Floyd L. Chamberlain from his reversionary interest in and to said Applications and Letters Patent issued thereon, as provided in said Agreement of May 16th, 1929." Finally, it further provided, "You, (Voss) on your part, agree that you do now, and will in the future, acknowledge the validity of all patents issued or to be issued upon all said Applications for Letters Patent filed by the undersigned (Etten) *in respect to ironing machines,* and that you will not voluntarily lend your aid to any person, firm or corporation in attacking the validity of either or any of *said* patents." (Emphasis supplied.)

The paper is inartistically drawn but the intent is clear. Both of the above quotations limit the scope of the agreement to the one item of "ironing machines" and this was previously identified as "Chamberlain Ironer, Model 'V'."

On October 16, 1929, Floyd L. Chamberlain assigned all of his right, title and interest in and to the License and Royalty Agreement of May 16, 1929 to Chamberlain Corporation (Plaintiffs' Exhibit C–C). Defendants contend that this assignment carried with it Floyd L. Chamberlain's reversionary interest of an undivided one-half referred to in Paragraph II of the License and Royalty Agreement. This reversionary interest was specifically excluded from the anticipated October 16, 1929 assignment by the same Paragraph II of the License and Royalty Agreement of May 16, 1929 which created the said reversionary interest, the said exclusion being set forth as follows: "and no assignment of said Letters Patent or of the rights created under this contract shall, in case of a forefeiture declared against an assignee of second party, be held or be construed to interfere with the reversion of an undivided one-half thereof to Floyd L. Chamberlain, as herein provided."

The October 16, 1929 assignment did not, was not intended to, and was never construed by the parties as divesting the reversionary interest of Floyd L. Chamberlain under the License and Royalty Agreement. Nothing could show this more conclusively than the reference to the said Floyd L. Chamberlain reversionary interest in the Voss letter-agreement (Defendants' Exhibit W–26) of May 10, 1932, to which all of the interested parties subscribed.

Recognizing the validity of the May 16, 1929 agreement with reference to future inventions and the assignment of the benefits of such agreement by Floyd L. Chamberlain to the Chamberlain Corporation under date of October 16, 1929, Nicholas L. Etten on October 16, 1935 assigned (Plaintiffs' Exhibit A–A) to the Chamberlain Corporation various patents obtained by him in 1934 and 1935 pertaining to wringers and to various applications for Letters Patent then pending, including Applications S.N. 648,620 and S.N. 38,932 for a wringer release mechanism involved in this action.[1] This assignment was made subject to the terms and conditions of the May 16, 1929 License and Royalty Agreement. The assignment was duly recorded in the Patent Office on October 24, 1935, in Liber S164, Page 235.

For the period 1935 to 1943 Chamberlain Corporation had engaged in considerable litigation concerning numerous inventions for which patents had been issued or applications were pending. In

---

1. See paragraph one, opinion Court of Appeals, 184 F.2d 737, for pertinency of Applications S.N. 648,620, and S.N. 38,932.

the latter part of 1943 Nicholas L. Etten, who was the inventor and the applicant in the Patent Office with reference to Application S.N. 38,932 and Reissue Application S.N. 167,775, expressed his desire to vindicate his position of priority in respect to the inventions involved therein. The Chamberlain Corporation not wishing to become involved in any further litigation at that time because of possible counterclaim involvements, but recognizing Etten's vital interests under the License and Royalty Agreement of May 16, 1929 (which had been recorded in the Patent Office on June 17, 1932, in Liber D153, Page 541) advised Etten that they did not wish to become a party to the suit under R.S. § 4915, but expressed a willingness to assist Etten in any legal action he might feel necessary to take in order to protect his position. On or about September 22, 1943, on the advice of its patent counsel, Charles K. Woodin, Esq., and in his Chicago office, Chamberlain Corporation by its President, George R. Keltie, executed assignments transferring the entire legal title to the patent and patent applications involved in this suit to the said Nicholas L. Etten.

About this time Charles F. Meroni, Esq., of Chicago, Illinois, was consulted by Woodin with relation to any proceedings that might be taken on behalf of Etten. Under date of October 7, 1943 (Defendants' Exhibit W–12) Meroni wrote to Woodin confirming a conference held by Meroni with Woodin on September 27, 1943, at which time Woodin had advised Meroni that "the Etten application is not assigned to the company." It would seem perfectly obvious that Meroni came out of the conference with Woodin convinced that the title to the patent and patent applications herein involved was in Etten. The fact that this conference was held is further confirmed by letter from Woodin to Etten under date of October 4, 1943 (Defendants' Exhibit W–13).

■ The fact of the execution of the said assignments is further corrborated by the testimony of George R. Keltie,

President of Chamberlain Corporation, who was able to identify the circumstance of his being in Chicago in Mr. Woodin's office by certain other appointments that he had in or about Chicago at that exact time. The various correspondence and the testimony as to what took place at that time is convincing that Woodin at the time of his conference with Meroni did have such assignments. Time was here of the essence as the statutory six months limitation from the date of the decision of the Patent Office Board of Appeals would expire October 24, 1943. This suit was instituted October 23, 1943. All of the circumstances happening about this time uncontrovertibly point to the fact that there were assignments prepared by Woodin and executed by Chamberlain Corporation vesting title in Etten. There is no question but that at the time of the institution of the R.S. § 4915 action the requisite legal title was in Etten.

■ Having in mind that Etten was the inventor, the applicant and party in the interference actions before the Patent Office, the recipient of royalties from Chamberlain Corporation under the License and Royalty Agreement of 1929, and as above indicated, was at that time the owner of the legal title to the patent and applications here involved, he certainly qualified as an applicant at the time of institution of the said R.S. § 4915 action within the meaning of that statutory requirement.

■ The defendants object to the 1943 assignments and the nunc pro tunc assignments with reference thereto on the ground that there was no evidence of any proper corporate action. There is no evidence that anyone connected with the corporation in any manner ever did object, but even had there been such evidence this contention is without merit as the defendants qualify neither as directors, stockholders nor creditors of the corporation and cannot thus collaterally attack the validity of such assignments. Bassick Mfg. Co. v. Ready Auto Supply Co., Inc., D.C.E.D.N.Y., 22 F.2d 331.

On March 1, 1944, Etten decided to assign the applications and patent here in suit to Chamberlain Corporation; accordingly, written assignments were executed, such assignments being subject to the terms and conditions of the May 16, 1929 License and Royalty Agreement. The fact that these assignments were recorded in the Patent Office is further proof that the parties at no time throughout these negotiations made any effort to conceal anything, and furthermore that the parties recognized that at this time title to the patent and the applications were in Etten. It was not until after these assignments had been made and recorded that it was discovered that there was a break in the chain of title, that the 1943 assignments to Etten had not been placed on record by Mr. Woodin. A search having failed to locate them, nunc pro tunc assignments setting forth the content of the lost or misplaced 1943 assignments (Plaintiffs' Exhibits G–G and H–H) were prepared and executed on August 30, 1946, and duly recorded in the Patent Office. As I have already indicated, I am convinced that the patent and applications here involved were duly assigned by Chamberlain Corporation to Etten in 1943 by valid assignments. The mere fact that the assignments were not recorded prior to the institution of the suit is immaterial. John Tuman & Sons, Inc. v. Basse, 2 Cir., 113 F.2d 928.

Under date of March 29, 1944, Lena E. Chamberlain, surviving spouse and sole heir at law of Floyd L. Chamberlain, deceased, by her assignment (Plaintiffs' Exhibit I–I) conveyed all of her interest in and to the said patent and applications, including her right to receive the one-half reversionary interest of the late Floyd L. Chamberlain under the provisions of said License and Royalty Agreement. By virtue of this assignment Nicholas L. Etten acquired the outstanding one-half reversionary interest of Floyd L. Chamberlain and thereupon became the owner of the full and complete reversionary interest created by that agreement.

The question now presents itself—what happens to the action since the legal title to the patent and the applications is no longer in the original plaintiff, Nicholas L. Etten, it having been reassigned pendente lite?

The Court of Appeals suggests that it may be necessary to make a determination as to whether the provisions of Rule 25(c), 28 U.S.C.A., are contrary to the substantive law as set out in R.S. § 4915 and whether the doctrine of laches or any other principle of law or equity would militate against the addition or substitution of Chamberlain Corporation as a party as sought by the litigants. In my opinion this matter of the substitution of Chamberlain Corporation is moot by reason of the stipulation of the parties which made Chamberlain Corporation an additional party-plaintiff and which was filed with the approval of the Court, as well as by the allowance of the motion of Chamberlain Corporation to appear voluntarily, which said allowance had previously been improvidently denied by the Court in the final paragraph of its general order of March 8, 1950.

As to the impact of Rule 25(c) upon the proceedings, it is well to note that before the adoption of the Rules, in the case of Schmertz Wire-Glass Co., v. Pittsburgh Plate-Glass Co., C.C.Pa., 168 F. 73, 89, the court, in effect, held that where an R.S. § 4915 action was properly instituted, the court did not lose jurisdiction by reason of the fact that the ownership of the intervening patent had been acquired by another party by assignment after the action was commenced, stating, "The action once begun became subject to the practice and proceedings incident to equity." See also Colman v. Hathaway, D.C.Mass., 285 F. 602. We are further of the opinion that the provisions of Rule 25(c) are not contrary to this holding but are consistent therewith and are actually a continuance of the doctrine therein expressed.

After Hazeltine Corporation v. Kirkpatrick, 3 Cir., 165 F.2d 683, 685, there can be no question but that the proceedings here come within the purview of

Rule 25(c) and so far as venue is concerned, it seems to me that that is answered by the fact that Chamberlain Corporation voluntarily appeared and became a party as indicated by its motion to be permitted to appear and by the stipulation above referred to.

The R.S. § 4915 action, therefore, was properly instituted by a qualified applicant and the Court did not lose jurisdiction by the assignment of the legal title to the Chamberlain Corporation. Etten still retained vital interests in the patent and applications and I do not believe that he ceased to become an applicant at the time of the assignment. This was evidently also the construction placed thereon by the plaintiff and accounts for the fact that Chamberlain Corporation was not immediately brought into the action.

If Rule 25(c) is applicable, no such appearance would ever have been necessary since under that Rule the action may continue in the name of the original plaintiff. This Rule reads as follows:

"(c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule."

Hazeltine Corporation v. Kirkpatrick, supra, involved a declaratory judgment action concerning certain patents. During the pendency of the action Hazeltine Corporation assigned the patents to a wholly owned subsidiary, Hazeltine Research, Inc. Plaintiff filed motions to join the assignee as a party-defendant under the provisions of Rule 25(c). The assignee appeared specially and opposed, averring that it had no place of business within the jurisdiction of the court. The motions were granted. On appeal the Court of Appeals stated: "We see no want of jurisdiction in the district court to enter the orders of June 16, 1947. On the contrary, the situation here disclosed is just that which Rule 25(c) contemplates." This Rule certainly makes no distinction between plaintiff and defendant in an action when it states: "the action may be continued by or against the original party". Consequently, if the action taken by the court in the Hazeltine case was good as affecting the defendant, being the party against whom the action was instituted, by the same token, it seems to me, the same interpretation is equally applicable affecting the situation of the plaintiffs in the instant case.

I have already found that at the time of the institution of the action the Court had full jurisdiction, that the plaintiff was an applicant and that the action was properly brought, and I can see no reason why the logic of the Court of Appeals above quoted is not equally applicable to an action under R.S. § 4915 as to any other action involving patent rights. Moreover, as pointed out in Paper Container Mfg. Co. v. Dixie Cup Co., 3 Cir., 170 F.2d 333, the court having acquired jurisdiction by the institution of the action within the six months limitation period provided by the statute by a party who was an "applicant" within the meaning of the statute, such six months limitation on the institution of the action did not prevent the subsequent addition of other parties or a fortiori of the substitution of parties who pendente lite acquired an interest. In the instant case, as in Paper Container Mfg. Co. v. Dixie Cup Co., supra, the additional party has consented to appear and, furthermore, all parties have stipulated as to such appearance. The venue question discussed in Hazeltine Corporation v. Kirkpatrick, supra, is, of course, not here involved since there has been a voluntary appearance entered by Chamberlain Corporation, the assignee of the legal title. Parenthetically, I am of the opinion that regardless of the denial by this Court of the motion to permit Chamberlain Corporation to become a party, it would have made no difference in view of our interpretation of the scope of Rule

25(c). This question now becomes moot since Chamberlain Corporation has voluntarily appeared and has been made an additional party-plaintiff in the action.

Subsequent to the various assignments heretofore discussed, the latest in point of time being the nunc pro tunc assignment of August 30, 1946, a change in the picture occurred in that the Patent Office on September 3, 1946 issued Patent No. 2,406,951 to the defendant Lovell on Jantz Application S.N. 749,977, which was involved in the present R.S. § 4915 action. Accordingly, Etten sought to amend the complaint on the basis of what now constituted interfering patents by adding an additional action under R.S. § 4918, 35 U.S.C. § 66, now §§ 145, 146. At the time of the motion to amend, as well as at the time of the allowance thereof, Chamberlain Corporation had not been brought in as an additional party and, as pointed out by the Court of Appeals, a question was thereby raised as to whether Etten, in the light of the various assignments which occurred pendente lite, was a proper party-plaintiff to institute such action. The parties entitled to institute such an action are not as limited as are those under R.S. § 4915. Under R.S. § 4918 it is provided that "Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief * *."

At the time of the institution of the R.S. § 4918 action Etten, the original inventor and applicant in the Patent Office proceeding, after the various assignments heretofore discussed, had not only the right, which he had reserved in the May 16, 1929 agreement, to litigate and protect his inventions as well as the right to royalties under that agreement, but had in addition thereto, following the Lena E. Chamberlain assignment the full reversionary interest in the said patent involved in the action. Having in mind that Chamberlain Corporation has been added as a party-plaintiff, thus meeting the indispensable party requirement, and the further fact that the jurisdictional requirements for the qualification of a plaintiff under R.S. § 4918 are not as limited as those under R.S. § 4915, I feel that the rationale of the court in Paper Container Mfg. Co. v. Dixie Cup Co., supra, in dealing with the qualifications of a plaintiff under R.S. § 4915 would equally, and indeed with more force, apply in this R.S. § 4918 situation. Under such circumstances he was an interested party entitled to bring the action within the meaning of the requirements of R.S. § 4918.

### Conclusions of Law

1. The Court has personal jurisdiction of the plaintiffs, Nicholas L. Etten and Chamberlain Corporation, and of the defendants, Lovell Manufacturing Company and Walter L. Kauffman, II.

2. The action instituted in the District of Columbia on October 21, 1943, Civil Action No. 21688, was not adjudicated on the merits, and the dismissal thereof is not dispositive or res adjudicata of the plaintiffs' claims set forth in the instant suit.

3. The Etten, Chamberlain, Chamberlain Corporation and Voss agreement (Defendants' Exhibit W–26) has no relevancy in this case.

4. Nicholas L. Etten was properly and legally entitled as an "applicant" under R.S. § 4915 to file the original complaint herein.

5. Nicholas L. Etten is also a proper party-plaintiff in the amendment to the original complaint alleging a cause of action under R.S. § 4918.

6. Defendants' motion to add Chamberlain Corporation as a party-plaintiff was improvidently denied by the order of this Court of March 8, 1950, and the said denial should be revoked.

7. Under the facts and circumstances of this case there is no basis for the application of the doctrine of laches or of any other principle of law or equity which would militate against the addition or substitution of Chamberlain Corporation as a party.

8. The parties having in open Court, with the approval of the Court, stipulated on May 3, 1951 the addition of Chamberlain Corporation herein as a party-plaintiff, such party is properly a party hereto under the provisions of Rules 15(c), 20(a) and 25(c) of the Federal Rules of Civil Procedure.

9. Chamberlain Corporation having acquired the legal title to the Etten applications and patent in suit by the aforesaid assignments of March 1, 1944 is an interested party and proper additional party-plaintiff in the suit under the provision of R.S. § 4918.

10. Both Nicholas L. Etten and Chamberlain Corporation because of their respective interests in the subject matters of the Etten applications and patent in suit are properly parties-plaintiff in all three causes of action herein, namely, the suits under R.S. §§ 4915 and 4918 and the tort action for damages arising out of fraud, and this Court has jurisdiction to determine the same.

Let order be submitted in accordance with the foregoing.